MICHELLE (MINJU) Y. CHO (SBN 321939)
mcho@aclunc.org
SEAN RIORDAN (SBN 255752)
sriordan@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

ASEEM MEHTA (SBN 338020)
aseemm@advancingjustice-alc.org
JINGNI (JENNY) ZHAO (SBN 284684)
jennyz@advancingjustice-alc.org
ASIAN AMERICANS ADVANCING
JUSTICE – ASIAN LAW CAUCUS
55 Columbus Avenue
San Francisco, CA 94111
Telephone: (415) 896-1701
Facsimile: (415) 896-1702

*Attorneys for Plaintiffs*
Additional Counsel Listed On Next Page

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MILTON MENDEZ; GUILLERMO MEDINA REYES; CRUZ LEANDRO MARTINEZ LEIVA; R.H.M.; E.O.A.R.; and all those similarly situated,<br><br>          Plaintiffs,<br><br>          v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TAE JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement; MOISES BECERRA, Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; THE GEO GROUP, INC.; NORBAL VAZQUEZ, Facility Administrator of Mesa Verde ICE Processing Center; MINGA WOFFORD, Facility Administrator of Golden State Annex,<br><br>          Defendants. | Case No. 3:23-cv-00829<br><br>**PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>**CLASS ACTION** |

BREE BERNWANGER (SBN 331731)
bbernwanger@lccrsf.org
LEE ANN FELDER-HEIM (SBN 341429)
lafelderheim@lccrsf.org
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone: (415) 543-9444
Facsimile: (415) 543-0296

MICHAEL KAUFMAN (SBN 254575)
mkaufman@aclusocal.org
MAYRA B. JOACHÍN (SBN 306065)
mjoachin@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA
1313 W. 8th Street, Suite 200
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 915-0220

ROXANA MOUSSAVIAN (SBN 329897)
roxana@pangealegal.org
ETAN NEWMAN (SBN 308728)
etan@pangealegal.org
PANGEA LEGAL SERVICES
391 Sutter Street, Suite 500
San Francisco, CA 94108
Telephone: (415) 579-4662
Facsimile: (415) 593-5335

HONG-AN N. TRAN (SBN 267685)
atran@jenner.com
MEI H. LIU (SBN 318112)
mei.liu@jenner.com
MAURA E. SMYLES (DC BN 90006775)*
msmyles@jenner.com
JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105
Telephone: (628) 267-6800
Facsimile: (628) 267-6859

*Attorneys for Plaintiffs*
*Admitted *Pro Hac Vice*

## TABLE OF CONTENTS

I.      INTRODUCTION AND RELIEF REQUESTED ........................................................1

II.     FACTS .................................................................................................................2

        A.   Plaintiffs filed suit seeking to enjoin retaliation for protected First Amendment activity..............................................................................................2

        B.   On the morning of March 7, 2023, counsel received reports from hunger strikers in Mesa Verde of violence by ICE and GEO staff, people being forcibly removed for transfers, and inability to contact attorneys via the dorm phones. .................3

III.    ARGUMENT .......................................................................................................5

        A.   Standard for issuance of Temporary Restraining Order. ......................................5

        B.   Plaintiffs are likely to succeed on the merits. ....................................................5

             1.   Plaintiffs' Participation in a Hunger Strike is Protected by the First Amendment.................................................................................................6

             2.   Defendants' Actions, including Violence, Threats, Intimidation, Sexual Harassment, Removing Plaintiffs from the Facility, and Isolating Plaintiffs from their Attorneys and Families, would Chill a Person of Ordinary Firmness from Continuing Engagement in Protected Activity....................7

             3.   Plaintiffs' Protected Activity was a Substantial Motivating Factor Behind Defendants' Actions. ................................................................................10

             4.   Defendants' Retaliatory Adverse Actions Also Lack Any Legitimate Institutional Basis. ...................................................................................12

        C.   Plaintiffs satisfy the remaining factors for preliminary relief ...........................15

             1.   Unconstitutional retaliation in the form of involuntary transfers to other ICE facilities, subjection to physical violence, and deprivation of access to attorneys constitutes irreparable harm. ...................................................15

             2.   The public interest and balance of equities weigh heavily in Plaintiffs' favor. .........16

        D.   Justice requires and the Court is empowered to grant comprehensive relief for the class...............................................................................................................17

IV.     SECURITY ........................................................................................................18

V.      CONCLUSION...................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011)................................................................................................5, 17

*Ariz. Students' Assoc. v. Ariz. Bd. of Regents*,
824 F.3d 858 (9th Cir. 2016).......................................................................................................5

*Brodheim v. Cry*,
584 F.3d 1262 (9th Cir. 2009).........................................................................................8, 9, 10

*Castillo v. Barr*,
449 F. Supp. 3d 915 (C.D. Cal. 2020).......................................................................................16

*Chhoeun v. Marin*,
306 F. Supp. 3d 1147 (C.D. Cal. 2018).....................................................................................17

*Clement v. California Dept. of Corr.*,
364 F.3d 1148 (9th Cir. 2004)....................................................................................................13

*Dumbrique v. Brunner*,
No. 14-CV-02598-HSG, 2016 WL 3268875 (N.D. Cal. June 15, 2016)..........................6

*E.O.H.C. v. Barr*,
434 F. Supp. 3d 321 (E.D. Pa. 2020) *order vacated, appeal dismissed as moot sub nom. E.O.H.C. v. Att'y Gen. United States,* 2020 WL 2111302 (3d Cir. Apr. 20, 2020) ...........................................................................................................................................13

*F.T.C. v. Sup. Ct. Trial Lawyers Ass'n*,
493 U.S. 411 (1990) (Brennan, J., dissenting) .................................................................7

*Freedom for Immigrants v. U.S. Dep't of Homeland Sec.*,
No. 219CV10424ABGJSX, 2020 WL 2095787 (C.D. Cal. Feb. 11, 2020) .................................13

*Gray v. Hernandez*,
651 F. Supp. 2d 1167 (S.D. Cal. 2009) .................................................................................8

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017)........................................................................................................15

*Hines v. Gomez*,
108 F.3d 265 (9th Cir. 1997)........................................................................................................8

*J.L. v. Cissna*,
341 F. Supp. 1048 .......................................................................................................................17

ii

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003)............................................................................................18

*McCollum v. CDCR*,
   647 F.3d 870 (9th Cir. 2011)...........................................................................................10

*Nieves v. Bartlett*,
   139 S. Ct. 1715 (2019) ....................................................................................................10

*Nken v. Holder*,
   556 U.S. 418 (2009).........................................................................................................16

*Orantes–Hernandez v. Smith*,
   541 F. Supp. 351 (C.D. Cal. 1982) ..................................................................................18

*Pratt v. Rowland*,
   65 F.3d 802 (9th Cir. 1995)................................................................................................8

*Preminger v. Principi*,
   422 F.3d 815 (9th Cir. 2005)............................................................................................16

*Price v. City of Stockton*,
   390 F.3d 1105 (9th Cir. 2004)..........................................................................................17

*Rhodes v. Robinson*,
   408 F.3d 559 (9th Cir. 2005)..................................................................................8, 12, 13

*Rizzo v. Dawso*,
   778 F.2d 527 (9th Cir. 1985)..............................................................................................8

*Roulette v. City of Seattle*,
   97 F.3d 300 (9th Cir. 1996)................................................................................................6

*Sammartano v. First Judicial Dist Ct.*,
   303 F.3d 959 (9th Cir. 2002).............................................................................................16

*Solomon v. Petray*,
   795 F.3d 777 (8th Cir. 2015)..............................................................................................8

*Stefanoff v. Hays Cnty.*,
   154 F.3d 523 (5th Cir. 1998) (per curiam).........................................................................6

*Texas v. Johnson*,
   491 U.S. 397 (1989)............................................................................................................6

*Toussaint v. Rushen*,
   553 F. Supp. 1365 (N.D. Cal. 1983) ................................................................................18

*Turner v. Safley*,
   482 U.S. 78 (1987).............................................................................................................12

iii

*Valandingham v. Bojorquez*,
  866 F.2d 1135 (9th Cir. 1989)...............................................................................................9

*Venegas v. Cnty. of Riverside*,
  No. 518CV02293JLSSHK, 2022 WL 2199842 (C.D. Cal. Mar. 29, 2022) ...................................9

*Winter v. NRDC, Inc.*,
  555 U.S. 7 (2008) ....................................................................................................................5

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
  No. 19-CV-00792-EMC, 2020 WL 4458908 (N.D. Cal. May 27, 2020) ....................................17

**Constitutions**

First Amendment............................................................................................................ *passim*

Fifth Amendment ...............................................................................................................16

First and Fourteenth Amendments ........................................................................................6

**Statutes**

Civil L.R. 7-1 .......................................................................................................................1

Civil L.R. 65-1 .....................................................................................................................1

**Court Rules**

Rule 65(c)............................................................................................................................18

iv

<u>**NOTICE OF MOTION AND MOTION**</u>

PLEASE TAKE NOTICE that, as soon as they may be heard, Plaintiffs will and hereby do move, pursuant to Civil L.R. 7-1 and 65-1, for a temporary restraining order enjoining Defendants ICE and GEO from (1) transferring or threatening to transfer Plaintiffs to different detention facilities; (2) continuing with the unconstitutional transfers of putative class members Pedro Figueroa-Padilla, Jose Hernandez, Raymundo Noe Dominguez Vidal and Roberto Carlos Franco Guardado; (3) using violence, excessive physical force, or sexually-abusive pat downs against Plaintiffs; (4) denying Plaintiffs access to their attorneys; and (5) otherwise engaging in any further retaliation for Plaintiffs' exercise of free speech. This motion is supported by the following Memorandum of Points and authorities and declarations of Eva Umejido, Genna Beier, Ilyce Shugall, Kathleen Kavanagh, Kelsey Morales, Laura Jones, Lee Ann Felder-Heim, Michelle (Minju) Cho and R.H.M.

Pursuant to Civil L.R. 65-1(b), on March 7, 2023 at 8:59 a.m., counsel for Plaintiffs emailed counsel for ICE and GEO to advise of the emergency reasons requiring them to seek a temporary restraining order.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION AND RELIEF REQUESTED**

Named Plaintiffs Milton Mendez, Guillermo Medina Reyes, Cruz Leandro Martinez Leiva, R.H.M., E.O.A.R., and the class they seek to represent (collectively, "Plaintiffs") seek this Court's intervention to halt egregious retaliation by Defendants Immigration and Customs Enforcement ("ICE") and the GEO Group, Inc. ("GEO") in response to their peaceful hunger strike. Plaintiffs began their hunger strike on February 17, 2023 and filed this putative class action on February 23, 2023. While Defendants' pattern and practice of retaliation has been ongoing since the strike began, the severity of such retaliation escalated dramatically this morning, necessitating this motion. Numerous Plaintiffs have reported that ICE officers in military-style clothing and gear entered a dormitory, handcuffed four Plaintiffs, and violently removed them from the dormitory–to be transferred to an out-of-state detention facility. Plaintiffs also reported that Defendants cut off their access to attorney-client

1

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-cv-00829

communication channels. Defendants restored this access only after Plaintiffs' counsel emailed Defendants' counsel this morning, demanding an explanation.

Participation in a hunger strike is a form of protected speech under the First Amendment. Defendants' abusive, retaliatory actions have violated and continue to violate Plaintiffs' First Amendment rights. They seek a Temporary Restraining Order ("TRO") enjoining Defendants from (1) transferring or threatening to transfer Plaintiffs to different detention facilities, (2) continuing to carry out the unconstitutional transfers of Plaintiffs Pedro Figueroa-Padilla, Jose Hernandez, Raymundo Noe Dominguez Vidal and Roberto Carlos Franco Guardado, (3) using violence, excessive physical force, or sexually-abusive pat downs against Plaintiffs, (4) denying Plaintiffs access to their attorneys, and (5) otherwise engaging in any further retaliation for Plaintiffs' exercise of free speech.

## II.   **FACTS**

### A.  **Plaintiffs Filed Suit Seeking to Enjoin Retaliation for Protected First Amendment Activity.**

Plaintiffs are approximately 82 persons detained in ICE custody at Mesa Verde and Golden State Annex who began a peaceful hunger strike on February 17, 2023. Complaint, ECF 1, ¶ 2. Plaintiffs declared the hunger strike as a form of collective peaceful protest against their prolonged detention, abhorrent conditions of confinement, and poor treatment, including being served expired food, inadequate medical care, lack of access to hygienic clothes and footwear, and a pattern of retaliation, among other conduct by Defendants. *Id.* ¶ 24. The message and demands of the hunger strike were conveyed directly to Defendants through grievances filed at the facilities and publicly through the media and reporting. *Id.* ¶ 25-26.

In response to the peaceful hunger strike and beginning immediately upon Plaintiffs' declarations that they were beginning the hunger strike, Defendants engaged in retaliation. *Id.* ¶ 30-35. Defendants denied or restricted access to the law library, family visitation, church, yard time, and recreation activities; threatened and taunted Plaintiffs; made the temperature of the dorms uncomfortably cold; deprived Plaintiffs of essential non-food commissary items; and engaged in other harassment and threats to induce Plaintiffs to end their hunger strike. *Id.*

On February 23, 2023, six days after the beginning of the hunger strike, Plaintiffs filed suit in this Court seeking to enjoin Defendants from retaliating against them in violation of the First Amendment, and sought an order from the Court enjoining Defendants from further retaliation, including retaliatory transfers. ECF 1. On February 24, 2023, Plaintiffs' counsel emailed copies of the complaint to Michelle Lo, civil division chief for the Office of the U.S. Attorney for the Northern District of California; and to Susan Coleman, who has represented the GEO Group, Inc. in other matters. *See* Decl. of Michelle (Minju) Y. Cho in Support of Named Plaintiffs R.H.M. and E.O.A.R.'s Administrative Motion to Proceed Under Initials, ECF 009-1, ¶ 3. On March 7, 2023, Plaintiffs' counsel informed Federal Defendants' counsel and Ms. Coleman of Plaintiffs' intent to file this motion, if the retaliation was not promptly rectified.

**B. On the morning of March 7, 2023, counsel received reports from hunger strikers in Mesa Verde of violence by ICE and GEO staff, people being forcibly removed for transfers, and inability to contact attorneys via the dorm phones.**

Around 6:00 am on March 7, 2023, multiple GEO staff members entered Mesa Verde Dorm C wearing helmets and hard plastic over their faces and chests, and carrying batons and pepper spray. *See* Declaration of R.H.M in Support of Plaintiffs' Motion for a Temporary Restraining Order ("R.H.M. Decl.") ¶¶ 3-4. GEO staff members turned off Plaintiffs' phone access, limited tablet access, and made Plaintiffs feel they were being "held hostage." R.H.M. Decl. ¶ 7; Declaration of Ilyce Shugall in Support of Plaintiffs' Motion for a Temporary Restraining Order ("Shugall Decl.") ¶ 4.

The GEO staff members sought to send multiple Plaintiffs to "medical," against Plaintiffs' wishes. R.H.M. Decl. ¶¶ 3, 5, 15; Shugall Decl. ¶¶ 6, 8. Multiple GEO officers forcibly removed one Plaintiff from the dorm. R.H.M. Decl. ¶ 3; Shugall Decl. ¶ 6. Plaintiffs pleaded for confidential attorney calls, which the GEO staff members refused. Shugall Decl. ¶ 4; R.H.M. Decl. ¶ 7. Plaintiffs proceeded to use non-confidential tablet devices, only a couple of which were still working, to share information with attorneys and loved ones. Shugall Decl. ¶ 9; *see* Declaration of Kelsey Morales in Support of Plaintiffs' Motion for a Temporary Restraining Order ("Morales Decl.") ¶ 7; Declaration of Eva Umejido in Support of Plaintiffs' Motion for a Temporary Restraining Order ("Umejido Decl.") ¶ 4.

3

Shortly after GEO staff members arrived, Plaintiffs noticed that the commissary account system was not available to multiple Plaintiffs. Umejido Decl. ¶ 4; Mendez Decl. ¶ 11; Shugall Decl. ¶ 11. Several Plaintiffs noticed that their account included the word "Transferred" next to their name. Umejido Decl. ¶ 4.

Around 8:00 am, also on March 7, 2023, multiple officers arrived at Mesa Verde Dorm C in military-style clothing and gear. Umejido Decl. ¶ 4. Some officers appeared to be GEO officers in protective "riot" gear. R.H.M. Decl. ¶ 3; Shugall Decl. ¶ 6. Others, who entered later, wore badges that read, "San Francisco Special Force Response Team." R.H.M. Decl. ¶ 8;  Shugall Decl. ¶ 7; Morales Decl., Exhibit A. The "special force" officers demanded that all detained persons "[g]et on the floor." R.H.M. Decl. ¶ 8. The officers used bodily force to throw multiple Plaintiffs to the ground. Shugall Decl. ¶ 8; R.H.M. Decl. ¶¶ 10, 12; Umejido Decl. ¶ 5. The officers then handcuffed a total of four individuals and removed them from the dorm. R.H.M. Decl. ¶¶ 3, 9; Shugall Decl. ¶ 7. The full names of the Plaintiffs ICE removed from the dorm are: Pedro Figueroa-Padilla, Jose Hernandez, Raymundo Noe Dominguez Vidal and Roberto Carlos Franco Guardado. *See* R.H.M. Decl. ¶ 3, 9; Declaration of Katie Kavanagh in Support of Plaintiffs' Motion for a Temporary Restraining Order ("Kavanagh Decl."), Exhibit A; Declaration of Genna Beier in Support of Plaintiffs' Motion for a Temporary Restraining Order ("Beier Decl."), Exhibit A; Declaration of Laura Jones in Support of Plaintiffs' Motion for a Temporary Restraining Order ("Jones Decl."), Exhibit A; Declaration of Lee Ann Felder-Heim in Support of Plaintiffs' Motion for a Temporary Restraining Order ("Felder-Heim Decl."), Exhibit A.

At the time of the officers' arrival, Plaintiff Figueroa-Padilla was using a tablet device to communicate with an immigration attorney. Umejido Decl. ¶ 4. An ICE officer grabbed the tablet from Figueroa-Padilla's hands and threw it to the ground. *Id.* The ICE officer handcuffed Figueroa-Padilla in a manner that caused him to scream from pain. *Id.* ¶ 5. While undergoing arrest, Figueroa-Padilla exclaimed to ICE officers, "[Y]ou are hurting my hand!", "[Y]ou are hurting my wrist", and "[M]y arm!" *Id*. Other Plaintiffs witnessed multiple officers on top of Figueroa-Padilla, while he exclaimed that he was not resisting arrest. R.H.M. Decl. ¶ 12; Shugall Decl. ¶ 8.

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-CV-00829

Around 1:00 pm, on the same day, immigration counsels for Plaintiffs Figueroa-Padilla, Hernandez, Franco Guardado, and Dominguez Vidal received separate and identical emails informing them that their client was transferred to an ICE detention facility located in El Paso, Texas. Kavanagh Decl. Ex. A; Beier Decl. Ex. A; Jones Decl. Ex. A; Felder-Heim Decl. Ex. A. The emails were sent from an email mailbox controlled by Defendants ICE, Johnson, and Becerra. *Id.* The messages explained that the decision to transfer the clients was purportedly "based on the recommendation by the onsite medical authority to the IHSC facility located in El Paso, Texas, for a higher level of medical care." *Id.* None of the transferred individuals requested medical care leading up to their transfer. Kavanagh Decl. ¶ 4; Beier Decl. ¶ 4; Jones Decl. ¶ 4; Felder-Heim Decl. ¶4.

## III.    ARGUMENT

### A.    Standard for Issuance of Temporary Restraining Order.

To succeed on a motion for temporary restraining order or preliminary injunction, a party must show that (1) they are likely to succeed on the merits of their claim; (2) they will suffer irreparable harm in the absence of relief; (3) the balance of hardships tips in their favor; and (4) a preliminary injunction is in the public interest. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

The four-part test is also satisfied if "serious questions going to the merits [are] raised and the balance of hardships tips sharply in the plaintiff's favor" so long as there is also a likelihood of irreparable harm and an injunction would be in the public's interest. *All for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

### B.    Plaintiffs are likely to succeed on the merits.

Plaintiffs are likely to succeed on the merits of their First Amendment retaliation claim. A First Amendment retaliation claim requires that the plaintiff show "that (1) [they] engaged in constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Assoc. v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

Plaintiffs satisfy all three prongs. First, Plaintiffs have been engaged in a peaceful hunger strike to protest their mistreatment and conditions of confinement. Second, Defendants responded to Plaintiffs' protected activity by cutting off their access to the outside world, surrounding them in military-style gear, violently throwing at least four Plaintiffs to the ground, forcibly handcuffing Plaintiffs, and removing Plaintiffs from their dorm with the apparent intent to transfer Plaintiffs out of the facility. Defendants have also been subjecting Plaintiffs to sexually-abusive pat downs whenever Plaintiffs move around the Mesa Verde facility. And, third, Defendants' actions were intended to suppress their speech and dissuade them and other detainees from engaging in similar protected speech in the future.

Thus, Defendants' actions constitute unlawful retaliation in violation of Plaintiffs' First Amendment rights, and the violation is ongoing.

### 1.    Plaintiffs' Participation in a Hunger Strike is Protected by the First Amendment.

First, Plaintiffs' participation in a hunger strike is a protected First Amendment activity. "The First Amendment literally forbids the abridgement only of 'speech,'" but "its protection does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). For this reason, the Supreme Court has clarified that the First Amendment does not solely protect the "spoken or written word," but also protects "conduct [that] may be 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.'" *Id.*; *see also Roulette v. City of Seattle*, 97 F.3d 300, 302-03 (9th Cir. 1996) ("The First Amendment protects not only the expression of ideas through printed or spoken words, but also symbolic speech."). When deciding whether expressive conduct "has sufficient communicative elements" for First Amendment protection, a court must ask whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Johnson*, 491 U.S. at 404 (internal citation omitted).

Hunger strikes constitute such protected conduct. In the carceral context, "a hunger strike may be protected by the First Amendment if it was intended to convey a particularized message." *Stefanoff v. Hays Cnty.*, 154 F.3d 523, 527 (5th Cir. 1998) (per curiam); *Dumbrique v. Brunner*, No. 14-CV-

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-CV-00829

02598-HSG, 2016 WL 3268875, at *7 (N.D. Cal. June 15, 2016) ("A hunger strike that is intended to convey a particularized message and has a high likelihood of conveying that message is therefore speech protected by the First Amendment."). Hunger strikes are uniquely expressive, given the hardship suffered by the speaker. As Justice Brennan noted, "[t]he passive nonviolence of King and Gandhi are proof that the resolute acceptance of pain may communicate dedication and righteousness more eloquently than mere words ever could." *F.T.C. v. Sup. Ct. Trial Lawyers Ass'n*, 493 U.S. 411, 450 (1990) (Brennan, J., dissenting). For this reason, hunger strikes are a "special form of political communication" that "convey[] an emotional message that is absent in . . . even a protest march." *F.T.C.*, 493 U.S. at 450.

Here, Plaintiffs have engaged in a peaceful hunger strike for over two-and-a-half-weeks to protest their mistreatment, abuse, and conditions of confinement at Mesa Verde and Golden State Annex detention facilities. ECF 1, ¶ 2. They intended to use the hunger strike to convey their grievances related to prolonged detention, labor exploitation, abuse, disrespect, mistreatment, inadequate medical care and hygiene at the facilities. The intended audiences for these messages include the public and Defendants. Since the start of the hunger strike, Plaintiffs have successfully conveyed their message to these audiences, as demonstrated by extensive local, state, and national media coverage in which Defendants have been asked to respond to Plaintiffs' messages. *See, e.g.,* Declaration of Minju Cho in Support of Plaintiffs' Motion for a Temporary Restraining Order ("2nd Cho Decl."), Exhibits 6, 7, 8, 9. There is little doubt that Plaintiffs' hunger strike constitutes expressive conduct protected by the First Amendment.

**2. Defendants' Actions, including Violence, Threats, Intimidation, Sexual Harassment, Removing Plaintiffs from the Facility, and Isolating Plaintiffs from their Attorneys and Families, would Chill a Person of Ordinary Firmness from Continuing Engagement in Protected Activity.**

Second, Defendants' actions would chill a person of ordinary firmness from continuing to engage in protected activity. Defendants' use of violence and force to throw several Plaintiffs to the ground, handcuff them in a painful manner, remove them from the facility for apparent transfer to

another facility; intimidation tactics including swarming Mesa Verde Dorm C in full military gear, and cutting off phone access for Plaintiffs to speak with their families or attorneys; and subjecting Plaintiffs to sexually abusive pat downs whenever they move around the facility, clearly would have a chilling effect on an individual of ordinary firmness. Shugall Decl. ¶5-8 (violence), 9 (cutting off phone access); R.H.M. Decl. ¶¶ 3 (cutting off phone access), 4 (military gear), 8 (military gear), 10-13 (violence), 22-26 (sexual pat downs); Morales Decl. ¶3 (military gear), 4-5 (violence), 6 (intimidation); Umejido Decl. ¶4 (military gear), 5 (violence); Kavanagh Decl, Exh. A (transfer); Beier Decl., Exh. A (transfer); Felder-Heim Decl., Exh. A (transfer); Jones Decl., Exh. A (transfer).

Indeed, in carceral settings, the Ninth Circuit has repeatedly recognized that aspects of the Defendants' conduct, even on their own, constitute unlawful adverse actions to sustain a First Amendment retaliation claim. Assaulting an individual in confinement for speaking out about conditions of confinement is prohibited by the First Amendment. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005) (finding First Amendment retaliation where officers assaulted incarcerated individual for filing grievance); *Solomon v. Petray*, 795 F.3d 777, 787-88 (8th Cir. 2015) (finding assault by officer in retaliation to incarcerated individual's protected expression an adverse action). In *Rizzo v. Dawson*, the Ninth Circuit recognized that retaliatory transfer of an individual from one prison to another constituted an adverse action, sufficient to sustain a First Amendment retaliation claim.778 F.2d 527, 531–32 (9th Cir. 1985); *see also Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) ("In view of the law of this circuit. . . we agree in principle with the argument advanced by Pratt and accepted by the district court: it would be illegal for DOC officials to transfer and double-cell Pratt solely in retaliation for his exercise of protected First Amendment rights.").[1] Moreover, the Ninth Circuit has explained that the threat of retaliatory actions, including a transfer to a different carceral facility, is sufficient to establish a chilling effect. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009)

---

[1] In the event that Defendants take a further retaliatory action of placing individuals in solitary confinement, as they have previously threatened, the First Amendment prohibits the use of segregation as punishment for speaking out about conditions of confinement. *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) (ten-day confinement in segregation is sufficiently serious to support First Amendment retaliation claim); *Gray v. Hernandez*, 651 F. Supp. 2d 1167, 1175 (S.D. Cal. 2009) (placement in solitary confinement constitutes adverse action).

8

("The mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect.") (emphasis in the original); *see also Valandingham v. Bojorquez,* 866 F.2d 1135, 1138 (9th Cir. 1989) (holding that retaliatory actions by correctional officers to place incarcerated individual at risk of facing violence would violate the First Amendment). As one district court summarized, "[a]dverse actions include threats of discipline, transfer, or harm and do not need to be an independent constitutional violation." *Venegas v. Cnty. of Riverside*, No. 518CV02293JLSSHK, 2022 WL 2199842, at *31 (C.D. Cal. Mar. 29, 2022) (citing *Brodheim*).

Here, there can be no doubt that the *combination* of Defendants' use of violence, sexual harassment, threats of force, intimidation tactics, removal of Plaintiffs from the facility and staging them from transfer, and cutting off Plaintiffs from access to the outside world would chill a person of ordinary firmness. These tactics created feelings of terror in all Plaintiffs who witnessed them, even if they were not themselves handcuffed and violently removed from the dorms. *See, e.g.*, R.H.M. Decl. ¶¶ 17-18. These feelings of terror were compounded by Plaintiffs' inability to use the dorm phones or most tablets to communicate with attorneys or loved ones on the outside. *Id.* ¶¶ 7, 9. Defendants' ongoing retaliatory acts have caused Plaintiffs to feel isolated, targeted, and frightened. *Id.* ¶¶ 26-27.

Moreover, "as [the Ninth Circuit] has stated multiple times, "a retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights." *Brodheim*, 584 F.3d at 1269–70 (citing *Gomez v. Vernon,* 255 F.3d 1118, 1127 (9th Cir. 2001); *Hines v. Gomez,* 108 F.3d 265, 269 (9th Cir. 1997)). Here, as Plaintiff R.H.M confirms, Defendants actions have had a chilling effect on Plaintiffs' willingness to continue their protected activity of engaging in a peaceful hunger strike. R.H.M. Decl. ¶ 28 ("After what happened today, I've thought about ending my hunger strike. I am feeling very fearful for my safety and the safety of my peers at Mesa Verde. I know if I continue to speak up about the injustices here, I will be targeted, just like my four dormmates who were forcibly arrested and taken away today. To see them get their arms twisted, to hear them screaming, to see three officers on top of them, grabbing their legs, sticking knees into their backs, heads, and necks—it's scary and really discouraging. I witnessed the consequences of our speaking up today, and that frightens

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-CV-00829

me. It makes me scared to speak."); *see also* Morales Decl. ¶6 (recounting a Plaintiff's statement that hunger strikers were considering ending their strike due to the intimidation they experienced).

### 3. Plaintiffs' Protected Activity was a Substantial Motivating Factor Behind Defendants' Actions.

To establish retaliatory motive, a plaintiff must show that their protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim*, 584 F.3d at 1269–71. A plaintiff may provide facts indicating direct evidence or circumstantial evidence of a defendant's alleged retaliatory motive, including: "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." *McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011). To "prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). Specifically, a plaintiff must show that the defendant's retaliatory animus was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (quoting *Hartman*, 547 U.S. at 260).

Here, there exists ample evidence demonstrating Defendants' retaliatory motive was a "but-for" cause of their adverse actions.

First, the proximity in time between Defendants' retaliatory actions and Plaintiffs' protected conduct is unambiguous. Defendants' actions on March 7, 2023 occurred in the midst of Plaintiffs' ongoing hunger strike, and took place in Dorm C of Mesa Verde – the only dorm housing hunger strikers, and designated as the only space in Mesa Verde where hunger strikers are allowed to stay. Defendants specifically targeted individuals for arrest who remained on hunger strike 19 days into the strike. Additionally, Defendants' increasingly aggressive use of sexually abusive pat downs whenever Plaintiffs move around Mesa Verde has coincided with Plaintiffs' hunger strike and participation in this litigation. *See* R.H.M. Decl. ¶¶ 21-27.

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-CV-00829

Second, Defendants failed to provide any justifications for their adverse actions at the time that they took them, and the post facto rationales that they have offered are false and pretextual. When GEO officers stormed Mesa Verde Dorm C around 6:30 a.m. on March 7, Plaintiffs were quietly sleeping. There was no basis for officers to arrive with batons and pepper spray, and in military-style gear. Plaintiffs attempted to engage Defendants at that time to understand what prompted such action. Defendants refused to engage Plaintiffs, refused to explain why Plaintiffs' phone access had been cut off, and refused to explain why they were attempting to force certain individuals to go to a medical unit. Indeed, no medical personnel were present at any time during the events of March 7. Later that morning, when ICE's San Francisco Response Staff arrived at the facility, they entered wearing military-style gear and demanded that everyone drop to the floor. They forcibly tackled, pinned, handcuffed and removed several Plaintiffs from the facility and did not explain any basis for doing so. Again, no medical personnel were present. Defendants refused to provide any information or explanation for their actions to Plaintiffs during or in the hours in these incidents. When Plaintiff R.H.M. attempted to speak with Defendant Vasquez about whether Defendants were retaliating against the hunger strikers for their ongoing participation in the hunger strike, Defendant Vasquez smirked at R.H.M. R.H.M. Decl. ¶ 16.

Hours after Defendants' use of violence, intimidation, and force to harm, threaten and isolate Plaintiffs, Defendants provided conclusory email responses to the attorneys of the individual who were removed from the facility. Those emails claim that those individuals are in the process of being transferred to El Paso, Texas in order to obtain medical care that is not available at Mesa Verde. Defendants fail to specify what medical care is needed, nor do they provide any explanation for why such care can only be obtained by forcibly transferring Plaintiffs from California to Texas. This post facto rationale is pretextual and false. At no point did any of those individuals seek medical care. They were not in any acute need this morning when they were forcibly removed from the facility. Those individuals declined GEO's efforts to get them to go to a medical unit. Defendants' justification does not withstand scrutiny. No medical personnel were present during the retaliatory incidents, and

11

effectuating violent, painful, forcible arrests against individuals who have not eaten food in 18 days cannot plausibly be considered to be a necessary medical response.

Finally, that Defendants' rationales are pretextual is further evinced by the fact that Defendants' actions are consistent with their pattern of retaliation against individuals involved in collective, peaceful protest. Defendants have previously subjected individuals involved in filing grievances, complaining about mistreatment, and demanding legal accountability with threats of transfer to out-of-state facilities, imposition of solitary confinement, and forcing them to endure sexually abusive searches. *See* 2nd Cho Decl., Exhibits 3, 4, 5 (complaints filed with the U.S. Department of Homeland Security's Office for Civil Rights and Civil Liberties between August 2021 and January 2023).

In short, Plaintiffs have satisfied each of the three prongs of a First Amendment retaliation claim, and, thus, have demonstrated a likelihood of success on their claim.

### 4. Defendants' Retaliatory Adverse Actions Also Lack Any Legitimate Institutional Basis.

In the Ninth Circuit, a heightened standard applies to a First Amendment retaliation claim if raised by a duly incarcerated person serving a punitive sentence. An incarcerated person's First Amendment retaliation claim requires allegations that "(1) . . . [an] actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567–68. The Ninth Circuit has expressly stated that this heightened First Amendment retaliation standard applies "within the prison context" *Id.* at 567; *Turner v. Safley*, 482 U.S. 78, 89 (1987) (constitutional standards for prisons are relaxed based on the idea that an infringement of "inmates' constitutional rights" might be "valid if it is reasonably related to legitimate penological interests.").

The Ninth Circuit has *never* held that this heightened standard applies to a First Amendment retaliation claim raised by individuals like Plaintiffs, people subject to civil confinement in ICE custody. Indeed, at least one district court in California has expressly rejected the application of this heightened standard to claims arising out of the context of ICE custody: "As an initial matter, the Court

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-cv-00829

rejects DHS's argument that the standard for First Amendment retaliation claims within the prison context applies here. DHS provides no authority extending this heightened standard to civil immigration detention." *Freedom for Immigrants v. U.S. Dep't of Homeland Sec.*, No. 219CV10424ABGJSX, 2020 WL 2095787, at *3 (C.D. Cal. Feb. 11, 2020) (internal citations omitted). "Moreover, because detention of immigrants by DHS is civil confinement, not criminal confinement, 'we assume that [it] [is] nonpunitive in purpose and effect.'" *Id.* at *3 n.2 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)); *see also E.O.H.C. v. Barr*, 434 F. Supp. 3d 321, 337 (E.D. Pa. 2020) (applying generic First Amendment retaliation standard to claims by habeas petitioners in ICE custody) *order vacated, appeal dismissed as moot sub nom. E.O.H.C. v. Att'y Gen. United States,* 2020 WL 2111302 (3d Cir. Apr. 20, 2020).

But even if this Court holds that the heightened standard applies to civil immigration detention, Defendants' actions on the morning of March 7 constitute unconstitutional retaliation in response to Plaintiffs' peaceful, First-Amendment-protected conduct. The additional factor under *Rhodes* beyond the generally-applicable First Amendment retaliation standard already discussed is whether Defendants' actions reasonably advanced a legitimate correctional goal. *Rhodes*, 408 F.3d at 568. Defendants' actions here did not do so.

"A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were 'unnecessary to the maintenance of order in the institution.'" *Watison*, 668 F.3d at 1114-15. Even where a Defendant tries to articulate a post-hoc legitimate institutional interest, actual retaliatory motive and arbitrary actions invalidate that interest. *See Clement v. California Dept. of Corr.*, 364 F.3d 1148, 1152 (9th Cir. 2004).

As discussed above, *see supra* Section II.C., Defendants have failed to offer any legitimate justification for their forceful and frightening actions against Plaintiffs, demonstrating that their actions were "arbitrary and capricious." Defendants do not provide any justification as to the necessity of their actions to storm a dorm of hunger-striking Plaintiffs early in the morning in military gear, armed with batons and pepper spray, and violently arresting and removing individuals.

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-CV-00829

Nor were Defendants' actions necessary to the maintenance of security or order of Mesa Verde. First, peaceful hunger strikes do not pose a threat to security or order. In fact, ICE's Performance-Based National Detention Standards ("PBNDS"), which govern the operation of ICE detention facilities across the country, explicitly contemplate that individuals in custody may choose to engage in hunger strikes. *See generally* PBNDS § 4.2, pp. 253-56. The existence of these provisions means that ICE explicitly accepts the premise that hunger striking is permissible conduct by individuals in its custody. They outline how facility operators should respond to hunger strikes, and provide the permissible bounds for those facility operators' actions. Nothing in these provisions remotely suggests that the use of physical violence, retaliatory transfers, or deprivation of access to attorneys are appropriate responses to a hunger strike.

Second, Defendants have not offered any such justification for their actions, but to the extent Defendants intend to cite purported medical justifications for violently handcuffing and removing certain Plaintiffs, their actions violated ICE's mandatory policies. The PBNDS provides that "[i]nvoluntary medical treatment shall be administered only with medical, psychiatric and legal safeguards." PBNDS § 4.2, p. 253. One of those legal safeguards is evaluation by a neutral magistrate: "ICE policy is to seek a court order to obtain authorization for involuntary medical treatment. . . . If a court order is to be pursued, ICE/ERO [ICE/Enforcement and Removal Operations] shall work with the local ICE Office of Chief Counsel to work with the U.S. Attorney's Office to make the arrangements for a court hearing." *Id.*, p. 256. No such safeguards have been applied in this case. Plaintiffs' counsel have received no notice of any attempt by Defendants to secure a court order allowing them to engage in involuntary medical treatment, despite the fact that they have been counsel of record representing Named Plaintiffs and the putative class since February 23, 2023. On information and belief, nor has such notice been provided to the individual immigration attorneys representing the four hunger strikers forcibly removed from Dorm C. Moreover, even beyond any missing legal safeguards, Defendants' choice to engage in the traumatic and violent events of this morning belie any suggestion that Defendants employed any "medical" or "psychiatric" safeguards, PBNDS § 4.2, p. 253, prior to removing the four individuals against their will.

14

Taken together, these circumstances show that Defendants' actions were retaliatory, unconstitutional, and without justification. Plaintiffs, thus, have shown a likelihood of success even if the Court were to apply a heightened standard to their claim.

**C.    Plaintiffs satisfy the remaining factors for preliminary relief.**

**1.    Unconstitutional retaliation in the form of involuntary transfers to other ICE facilities, subjection to physical violence, and deprivation of access to attorneys constitutes irreparable harm.**

Plaintiffs will suffer irreparable harm absent this Court's intervention. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 995-96 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)) (internal quotation marks omitted). Thus, a finding that Plaintiffs are likely to succeed on the merits of their First Amendment claim necessarily means that they have "carried their burden as to irreparable harm." *Id.* at 995.

Further, the particular forms of retaliation that have taken place today, including involuntary transfers to other ICE detention facilities, the use of physical violence against detained individuals, and intentional deprivation of access to attorneys, are likely to interfere with Plaintiffs' ability to adequately prepare for their immigration proceedings, constituting an independent form of irreparable harm. When individuals are transferred to other ICE facilities, especially ones located farther away from their counsel, it interferes with their ability to prepare for their hearings with their counsel. It disrupts their ongoing proceedings if their immigration cases are transferred to other courts and re-assigned to judges who are unfamiliar with their cases. Depending on the location to which a person is transferred, their counsel may be forced to withdraw from representing them. Unrepresented individuals also face harm when they are transferred further away from their loved ones and community supporters on whom they rely for assistance gathering evidence to support their cases in immigration court.

Additionally, the unjustified use of physical violence inside a detention facility may physically incapacitate the target of such violence and require hospitalization, preventing him from proceeding with his immigration court case. Such violence and force have ancillary effects of causing feelings of

15

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-CV-00829

stress, intimidation, and trauma in third-party witnesses, including the Plaintiffs remaining in Dorm C who witnessed these acts, interfering with their ability to focus and preventing them from being able to concentrate on preparing adequately for their immigration court proceedings.

Lastly, the deprivation of access to attorneys causes irreparable harm by interfering with a person's ability to prepare for and participate in their immigration proceedings. The Fifth Amendment right to counsel of one's choice has little meaning if he is held incommunicado from his attorney of choice. The constitutional right to counsel *must* include the right to communicate with that counsel within the means already approved by one's jailers.

### 2. The public interest and balance of equities weigh heavily in Plaintiffs' favor.

When the government is the opposing party, as it is here, the last two stay factors–balance of equities and the public interest–merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the balance of equities and public interest clearly favor Plaintiffs. In the absence of relief, Plaintiffs will be subjected to physical force, denied access to their legal counsel, and transferred to other detention facilities–further impeding their communication with attorneys. The public as whole has an interest in upholding constitutional rights. *Sammartano v. First Judicial Dist Ct.*, 303 F.3d 959, 974 (9th Cir. 2002) (courts "have consistently recognized the significant public interest in upholding First Amendment principles"); *see Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Defendants' unconstitutional, retaliatory actions undermine society's confidence that our government respects the rule of law and the constitutional rights of all. The interests of Plaintiffs, who are engaged in peaceful protest while pursuing their rights in immigration court, are fully aligned with the interests of the public.

On the other hand, "there is no harm to the Government when a court prevents the Government from engaging in unlawful practices." *Castillo v. Barr*, 449 F. Supp. 3d 915, 923 (C.D. Cal. 2020) (citing *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)). Therefore, there is little or no supposed hardship to Defendants.

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-CV-00829

**D.    Justice requires and the Court is empowered to grant comprehensive relief for the class.**

The Court has authority to grant a classwide temporary restraining order that protects class members from further unlawful retaliation and stopping the unlawful retaliation that is currently in process. "By their very nature, preliminary injunctions are properly entered in emergency situations to enjoin imminent, irreparable harm." *Chhoeun v. Marin*, 306 F. Supp. 3d 1147, 1164 (C.D. Cal. 2018). In this case, the "impending irreparable harm" described above requires emergency relief "before the parties can engage in the lengthy process of gathering evidence and submitting arguments in support of a motion for class certification." *Id.* "There is no authority that suggests putative class members are not entitled to any injunctive relief while they await class certification." *Id.*

In recognition of these principles, "class-wide relief has sometimes been granted prior to class certification when such broad-based relief is necessary to effectuate relief for the individual plaintiffs, such as in the context of desegregation." *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, No. 19-CV-00792-EMC, 2020 WL 4458908, at *3 (N.D. Cal. May 27, 2020). This is particularly the case where, as here, relief other than on a class-wide basis would leave Plaintiffs at "significant risk for repeated rights violations," and "where it is necessary to preserve the status quo," including prior to class certification. *Id.* (internal quotation marks omitted); *see id.* ("[W]hen class-wide preliminary injunctions are granted prior to class certification, they overwhelmingly involve government defendants and operate to maintain the status quo.").

Class-wide relief is also appropriate here because it is "necessary to give [the] parties the relief to which they are entitled." *Price v. City of Stockton*, 390 F.3d 1105, 1118 (9th Cir. 2004) (upholding injunction providing benefits to non-parties); *see also J.L. v. Cissna*, 341 F. Supp. 1048, 1070 (class-wide preliminary injunctive relief necessary to prevent irreparable harm to the putative class). Only class-wide relief can put an end to violent retaliation that chills protected speech for *all* putative class members. Defendants violently arrested Mr. Figueroa-Padilla, Mr. Dominguez Vidal, Mr. Hernandez Gomez, and Mr. Franco Guardado *in full view* of multiple Named Plaintiffs and members of the proposed class. R.H.M. Decl.¶¶ 3, 9-14. Defendants threw Mr. Figueroa-Padilla and Mr. Franco

17

Guardado to the ground and handcuffed them, ignoring their cries of pain, in full view of Named Plaintiffs and members of the proposed class. R.H.M. Decl.¶¶ 10-13. Witnessing such violent retaliation, "[t]o see them get their arms twisted, to hear them screaming, to see three officers on top of them, grabbing their legs, sticking knees into their backs, heads, and necks," and know you could be next, would chill any person of ordinary firmness from engaging in the protected activity of hunger striking. R.H.M. Decl. ¶ 28. Indeed, it has chilled Plaintiff R.H.M., who feels "fearful for [his] safety" and is considering ending his hunger strike after witnessing today's violence. *Id.*; *see also* Morales Decl. ¶ 8 (hunger strikers who witnessed violence feel intimidated and considering ending strike). Absent class-wide emergency relief, Defendants could continue to pick off hunger strikers who are not Named Plaintiffs for retaliation that intimidates and terrifies Named Plaintiffs–and thus chills their speech.[2]

## IV.    SECURITY

"Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday,* 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). District courts routinely exercise this discretion to require no security in cases brought by indigent and/or incarcerated people. *See, e.g., Toussaint v. Rushen,* 553 F. Supp. 1365, 1383 (N.D. Cal. 1983) (state prisoners); *Orantes–Hernandez v. Smith,* 541 F. Supp. 351, 385 n. 42 (C.D. Cal. 1982) (detained immigrants). This Court should do the same.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court grant Plaintiffs' motion for a temporary restraining order, including enjoining Defendants from:

---

[2] For this Court to return Plaintiffs to the status quo and end the chilling effect of Defendants' retaliatory conduct, it must enjoin the ongoing transfer of Mr. Figueroa-Padilla, Mr. Dominguez Vidal, Mr. Hernandez Gomez, and Mr. Franco Guardado out of Mesa Verde. For the reasons described herein, this Court has clear authority to do so. Furthermore, Defendants are currently holding Mr. Figueroa-Padilla, Mr. Dominguez Vidal, Mr. Hernandez Gomez, and Mr. Franco Guardado incommunicado, in an unknown location, and without any access to their counsel, rendering Plaintiffs unable to amend the Complaint to include them as individual Plaintiffs in claims for individualized TRO relief. However, Plaintiffs are working diligently to do so once Defendants provide information and Mr. Figueroa-Padilla, Mr. Dominguez Vidal, Mr. Hernandez Gomez, and Mr. Franco Guardado's location and permit them to communicate with the outside world.

18

(1)    Transferring or threatening to transfer Plaintiffs to different detention facilities;

(2)    Continuing to carry out the unconstitutional transfers of Plaintiffs Pedro Figueroa-Padilla, Jose Hernandez, Raymundo Noe Dominguez Vidal and Roberto Carlos Franco Guardado;

(3)    Using violence, excessive physical force, or sexually-abusive pat downs against Plaintiffs;

(4)    Denying Plaintiffs access to their attorneys; and

(5)    Otherwise engaging in any further retaliation for Plaintiffs' exercise of free speech;

and order all other relief this Court deems just and proper.

Respectfully submitted,

Dated: March 7, 2023

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA

/s/ *Michelle (Minju) Y. Cho*
Michelle (Minju) Y. Cho

*Attorneys for Petitioners-Plaintiffs*

19