MICHELLE (MINJU) Y. CHO (SBN 321939)
mcho@aclunc.org
SEAN RIORDAN (SBN 255752)
sriordan@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

ASEEM MEHTA (SBN 338020)
aseemm@advancingjustice-alc.org
JINGNI (JENNY) ZHAO (SBN 284684)
jennyz@advancingjustice-alc.org
ASIAN AMERICANS ADVANCING
JUSTICE – ASIAN LAW CAUCUS
55 Columbus Avenue
San Francisco, CA 94111
Telephone: (415) 896-1701
Facsimile: (415) 896-1702

*Attorneys for Plaintiffs*
Additional Counsel Listed On Next Page

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MILTON MENDEZ; GUILLERMO MEDINA REYES; CRUZ LEANDRO MARTINEZ LEIVA; R.H.M.; E.O.A.R.; PEDRO FIGUEROA-PADILLA; JOSE RUBEN HERNANDEZ; RAYMUNDO NOE DOMINGUEZ VIDAL, ROBERTO CARLOS FRANCO GUARDADO; and all those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TAE JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement; MOISES BECERRA, Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; THE GEO GROUP, INC.; NORBAL VAZQUEZ, Facility Administrator of Mesa Verde ICE Processing Center; MINGA WOFFORD, Facility Administrator of Golden State Annex, <br><br> Defendants. | Case No. 3:23-cv-00829-TLT <br><br> **PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR SECOND *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER** <br><br> **CLASS ACTION** |

BREE BERNWANGER (SBN 331731)
bbernwanger@lccrsf.org
LEE ANN FELDER-HEIM (SBN 341429)
lafelderheim@lccrsf.org
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone: (415) 543-9444
Facsimile: (415) 543-0296

MICHAEL KAUFMAN (SBN 254575)
mkaufman@aclusocal.org
MAYRA B. JOACHÍN (SBN 306065)
mjoachin@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA
1313 W. 8th Street, Suite 200
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 915-0220

ROXANA MOUSSAVIAN (SBN 329897)
roxana@pangealegal.org
ETAN NEWMAN (SBN 308728)
etan@pangealegal.org
PANGEA LEGAL SERVICES
391 Sutter Street, Suite 500
San Francisco, CA 94108
Telephone: (415) 579-4662
Facsimile: (415) 593-5335

HONG-AN N. TRAN (SBN 267685)
atran@jenner.com
MEI H. LIU (SBN 318112)
mei.liu@jenner.com
MAURA E. SMYLES (DC BN 90006775)*
msmyles@jenner.com
JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105
Telephone: (628) 267-6800
Facsimile: (628) 267-6859

*Attorneys for Plaintiffs*
*Admitted *Pro Hac Vice*

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................................2

II.     FACTS ...............................................................................................................................4

        A.   Plaintiffs Filed Suit Seeking to Enjoin Retaliation for First Amendment Activity. ...........4

        B.   On March 7, 2023, Defendants Terrorized Hunger Strikers at Mesa Verde and Forcibly Transferred Four Plaintiffs. ..................................................................................4

        C.   Federal Defendants and Their Agents Brutally Transferred, Harassed, and Continue to Threaten Individual Plaintiffs Under the Pretext of Providing "Medical Care." ..................................................................................................................6

        D.   Defendants Continue to Threaten Plaintiffs with Forcible Transfer if They Do Not End Their Strike. ............................................................................................................8

III.    ARGUMENT ....................................................................................................................8

        A.   Venue is Appropriate in this District. ......................................................................................8

        B.   Standard for Issuance of Temporary Restraining Order. ....................................................13

        C.   Plaintiffs are Likely to Succeed on the Merits. ....................................................................13

             1.   Plaintiffs' Participation in a Hunger Strike is Protected by the First Amendment. ..........................................................................................................14

             2.   Defendants' Actions Would Chill a Person of Ordinary Firmness from Continuing Engagement in Protected Activity. ..................................................15

             3.   Plaintiffs' Protected Activity was a Substantial Motivating Factor Behind Defendants' Actions. ........................................................................................17

             4.   Defendants' Retaliatory Actions Also Lack Any Legitimate Institutional Basis. ...............................................................................................................20

        D.   Plaintiffs Satisfy the Remaining Factors for Preliminary Relief. .....................................22

             1.   Unconstitutional Retaliation in the Form of Involuntary Transfers, Physical Violence, and Deprivation of Access to Attorneys Constitutes Irreparable Harm. ...............................................................................................................22

             2.   The Public Interest and Balance of Equities Weigh Heavily in Plaintiffs' Favor. ...............................................................................................................23

        E.   Justice Requires and the Court is May Grant Comprehensive Relief for the Class. .........24

IV.     SECURITY .....................................................................................................................25

V.      CONCLUSION...............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011)................................................................................13

*Allstar Mktg. Group, LLC v. Your Store Online, LLC*,
666 F. Supp. 2d 1109 (C.D. Cal. 2009)..................................................................11

*Alul v. Am. Honda Motor Co., Inc.*,
No. 16-cv-4384-JST, 2016 WL 7116934 (N.D. Cal. Dec. 7, 2016) .......................11

*Aracely v. Nielsen*,
319 F. Supp. 3d 110 (D.D.C. 2018) ........................................................................13

*Ariz. Students' Assoc. v. Ariz. Bd. of Regents*,
824 F.3d 858 (9th Cir. 2016)..................................................................................14

*Branon v. Debus*,
289 F. App'x 181 (9th Cir. 2008) .............................................................................9

*Brodheim v. Cry*,
584 F.3d 1262 (9th Cir. 2009).........................................................................16, 17

*Castillo v. Barr*,
449 F. Supp. 3d 915 (C.D. Cal. 2020).....................................................................24

*Chhoeun v. Marin*,
306 F. Supp. 3d 1147 (C.D. Cal. 2018)....................................................................24

*Clement v. California Dept. of Corr.*,
364 F.3d 1148 (9th Cir. 2004)..................................................................................21

*Cohen v. United States*,
297 F.2d 760 (9th Cir. 1962), *cert. denied*, 369 U. S. 865.......................................9

*Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*,
472 F. Supp. 2d 1183 (S.D. Cal. 2007) ...................................................................12

*Ctr. for Biological Diversity v. Kempthorne*,
No. 07-cv-0894 EDL, 2008 WL 4543043 (N.D. Cal. Oct. 10, 2008).......................9

*DealTime.com Ltd. v. McNulty*,
123 F. Supp. 2d. 750 (S.D.N.Y.2000).......................................................................12

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F. 2d 834 (9th Cir. 1986)..........................................................................8, 9, 10

ii

*Dumbrique v. Brunner*,
No. 14-CV-02598-HSG, 2016 WL 3268875 (N.D. Cal. June 15, 2016).........................................14

*E.O.H.C. v. Barr*,
434 F. Supp. 3d 321 (E.D. Pa. 2020) *order vacated, appeal dismissed as moot sub nom. E.O.H.C. v. Att'y Gen. United States,* 2020 WL 2111302 (3d Cir. Apr. 20, 2020) ......................................................................................................................................20

*F.T.C. v. Sup. Ct. Trial Lawyers Ass'n*,
493 U.S. 411 (1990) .......................................................................................................................15

*In re Fenwick Island, Inc.*,
330 F. Supp. 1191 (E.D.N.C. 1971) ...............................................................................................11

*Flotsam of California, Inc. v. Huntington Beach Conference & Visitors Bureau*,
No. 06-cv-7028, 2007 WL 1152682 (N.D. Cal. Apr. 18, 2007) .....................................................11

*Freedom for Immigrants v. U.S. Dep't of Homeland Sec.*,
No. 219CV10424ABGJSX, 2020 WL 2095787 (C.D. Cal. Feb. 11, 2020) ....................................20

*GameTek LLC v. Electronic Arts*,
No. 12-CV-2927 BEN (RBB), 2013 WL 3864343 (S.D. Cal. July 23, 2013)................................12

*Getz v. Boeing Co.*,
547 F. Supp. 2d 1080 (N.D. Cal. 2008) ..........................................................................................11

*Gomez v. Vernon*,
255 F.3d 1118 (9th Cir. 2001)........................................................................................................17

*Hartman v. Moore*,
547 U.S. 250 (2006) ........................................................................................................................17

*Harvard v. Inch*,
408 F. Supp. 3d 1255 (N.D. Fla. 2019) ..........................................................................................13

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017)..........................................................................................................22

*Hines v. Gomez*,
108 F.3d 265 (9th Cir. 1997)....................................................................................................16, 17

*Italian Colors Rest. v. Am. Express Co.*,
No. C 03-3719 SI, 2003 WL 22682482 (N.D.Cal. Nov.10, 2003) .................................................12

*J.L. v. Cissna*,
341 F. Supp. 3d 1048 (N.D. Cal. 2018) ..........................................................................................25

*Jorgensen v. Cassiday*,
320 F.3d 906 (9th Cir. 2003)..........................................................................................................25

iii

*Joslyn v. Armstrong*,
No. 3:01-cr-198-CFD, 2001 WL 1464780 (D. Conn. May 16, 2001) .............................................13

*Kaur v. U.S. Airways, Inc.*,
No. C-12-5963 DMC, 2013 WL 181391 (N.D. Cal. May 6, 2013) .................................................11

*Lax v. Toyota Motor Corp.*,
65 F. Supp. 3d 772 (N.D. Cal. 20144) ...............................................................................................9, 11

*Lopez Reyes v. Bonnar*,
362 F. Supp. 3d 762 (N.D. Cal. 2019) .............................................................................................22

*McCollum v. CDCR*,
647 F.3d 870 (9th Cir. 2011).............................................................................................................17

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012).............................................................................................................22

*Nieves v. Bartlett*,
139 S. Ct. 1715 (2019) ......................................................................................................................17

*Nken v. Holder*,
556 U.S. 418 (2009) ..........................................................................................................................23

*Orantes–Hernandez v. Smith*,
541 F. Supp. 351 (C.D. Cal. 1982) ..................................................................................................25

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998)...........................................................................................................12

*Park v. Dole Fresh Vegetables, Inc.*,
964 F.Supp.2d 1088 (N.D. Cal. 2013) ...............................................................................................9

*Preminger v. Principi*,
422 F.3d 815 (9th Cir. 2005).............................................................................................................23

*Price v. City of Stockton*,
390 F.3d 1105 (9th Cir. 2004)...........................................................................................................25

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
No. 14-CV-05596-JST, 2015 WL 1738269 (N.D. Cal. Apr. 9, 2015)................................................9

*Rhodes v. Robinson*,
408 F.3d 559 (9th Cir. 2005)..............................................................................15, 18, 20, 21

*Rizzo v. Dawso*,
778 F.2d 527 (9th Cir. 1985)..............................................................................................15, 16

*Roberts Bros., Inc. v. Kurtz Bros.*,
231 F. Supp. 163 (D.N.J. 1964) ........................................................................................................11

iv

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013)...................................................................................................24

*Roling v. E\*Trade Securities, LLC*,
756 F. Supp. 2d 1179 (N.D. Cal. 2010) ...................................................................................10

*Roulette v. City of Seattle*,
97 F.3d 300 (9th Cir. 1996).......................................................................................................14

*Sammartano v. First Judicial Dist Ct.*,
303 F.3d 959 (9th Cir. 2002).....................................................................................................23

*Smith v. Warren*,
No. CIV. 10-838-BR, 2010 WL 3853198 (D. Or. Sept. 28, 2010).............................................9

*Stefanoff v. Hays Cnty.*,
154 F.3d 523 (5th Cir. 1998)......................................................................................................14

*STX, Inc. v. Trik Stik, Inc.*,
708 F. Supp. 1551 (N.D. Cal. 1988) ..........................................................................................11

*Texas v. Johnson*,
491 U.S. 397 (1989) ...................................................................................................................14

*Toussaint v. Rushen*,
553 F. Supp. 1365 (N.D. Cal. 1983) ..........................................................................................25

*Turner v. Safley*,
482 U.S. 78 (1987) .....................................................................................................................20

*Valandingham v. Bojorquez*,
866 F.2d 1135 (9th Cir. 1989).....................................................................................................16

*Van Dusen v. Barrack*,
376 U.S. 612 (1964).....................................................................................................................10

*Venegas v. Cnty. of Riverside*,
No. 518CV02293JLSSHK, 2022 WL 2199842 (C.D. Cal. Mar. 29, 2022) ...............................16

*Watison v. Carter*,
668 F.3d 1108 (9th Cir. 2012).....................................................................................................21

*Winter v. NRDC, Inc.*,
555 U.S. 7 (2008) .......................................................................................................................13

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
No. 19-CV-00792-EMC, 2020 WL 4458908 (N.D. Cal. May 27, 2020) ...................................24

*Zadvydas v. Davis*,
533 U.S. 678 (2001) ...................................................................................................................20

v

*Zepeda Rivas v. Jennings*,
   3:20-cv-2731-VC (N.D. Cal. filed May 20, 2020)..........................................................................13

**Statutes**

28 U.S.C. § 1391(c)(1)......................................................................................................................9

28 U.S.C. § 1404(a) .....................................................................................................................8, 10

Civil L.R. 7-1 ....................................................................................................................................1

**Court Rules**

Fed. R. Civ. P. 4(h)(1)(B) .................................................................................................................1

**Other Authorities**

Wright, Miller & Cooper, 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed.)........................................10

ICE Performance-Based National Detention Standards § 4.2 .........................................................21

ICE Performance-Based National Detention Standards § 4.3 .........................................................22

ICE Performance-Based National Detention Standards § 7.4 ...........................................................6

"U.S. District Courts - Median Time From Filing to Disposition of Civil Cases, by
   Action Taken," available at
   https://www.uscourts.gov/sites/default/files/data_tables/jb_c5_0930.2022.pdf............................12

vi

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE that, as soon as they may be heard, Plaintiffs will and hereby do move, pursuant to Civil L.R. 7-1 and 65-1, for a temporary restraining order to:

- Enjoin Defendants U.S. Immigration and Customs Enforcement, Tae Johnson, and Moises Becerra (collectively, the "Federal Defendants"), who have the sole authority to direct detainee transfers and initiate force-feeding procedures, from  (1) Transferring or threatening to transfer or authorizing or directing the transfer of Plaintiffs to different detention facilities in retaliation for their participation in the hunger strike; (2) Continuing to detain Individual Plaintiffs Pedro Figueroa-Padilla, Jose Ruben Hernandez, Raymundo Noe Dominguez Vidal, and Roberto Carlos Franco Guardado in a facility other than the Mesa Verde ICE Processing Center, where their transfer out of the Mesa Verde ICE Processing Center was effectuated in retaliation for their participation in the hunger strike; (3) Force-feeding or attempting to force-feed Plaintiffs without at least 24 hours' notice to Plaintiffs' counsel and to this Court; and (4) Otherwise engaging in or authorizing any further retaliation for Plaintiffs' exercise of protected First Amendment activity through their hunger strike; and

- Enjoin all Defendants from: (1) Using violence, excessive physical force, or sexually-abusive pat downs against Plaintiffs; (2) Denying Plaintiffs access to their attorneys; and (3) Otherwise engaging in any further retaliation for Plaintiffs' exercise of protected First Amendment activity through their hunger strike.

This motion is supported by the following Memorandum of Points and authorities and declarations of Eva Umejido, Genna Beier, Ilyce Shugall, Kathleen Kavanagh, Kelsey Morales, Laura Jones, Lee Ann Felder-Heim, Michelle (Minju) Cho, R.H.M, Cruz Leandro Martinez Leiva, and Raymundo Noe Dominguez Vidal.

On March 9, 2023, Plaintiffs personally served the summons, complaint, and notice of Plaintiffs' intent to renew their motion for a temporary restraining order ("TRO") on Defendant GEO's authorized agent. *See* ECF No. 29; Declaration of Michelle (Minju) Cho ISO 2nd TRO Mot. ("Cho Decl.") Ex. 1; Fed. R. Civ. P. 4(h)(1)(B). On March 10, 2023, at 9:21 a.m. PT, Plaintiffs' counsel notified via email Federal Defendants' counsel of Plaintiffs' intent to file this second TRO motion. Cho

1

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-CV-00829-TLT

Decl. Ex. 2. Also at 9:25 a.m. PT, Plaintiffs' counsel sent the same notification via email to Defendant GEO's authorized agent and General Counsel. Cho Decl. Ex. 3. Plaintiffs will provide a copy of the complete filing to Federal Defendants' counsel via email and to Defendant GEO via personal service and email.

Plaintiffs acknowledge that the Court's order set a briefing schedule and hearing date for a motion for a preliminary injunction. ECF No. 27 at 4. Respectfully, for the reasons described in the accompanying motion, Plaintiffs seek emergency relief to prevent irreparable harm from occurring prior to the Court's resolution of a preliminary injunction motion. On March 9, 2023, Defendants threatened additional Plaintiffs with transfer if they continued their hunger strike beyond today, March 10. Thus, retaliatory transfers may resume at any moment. Each day that Plaintiffs are subjected to Defendants' intimidation tactics, they are chilled from exercising their constitutional rights.

Should the Court wish to treat this motion as a motion for a preliminary injunction, Plaintiffs respectfully request an expedited briefing schedule, with Defendants' oppositions due by March 17, 2023, Plaintiffs' reply due by March 23, 2023, and a hearing on the Court's first available date thereafter. In any event, Plaintiffs will comply with the Court's operative orders regarding the timing and schedule of a motion for preliminary injunction.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Individual Plaintiffs Pedro Figueroa-Padilla, Jose Ruben Hernandez, Raymundo Noe Dominguez Vidal, Roberto Carlos Franco Guardado, Representative Plaintiffs Milton Mendez, Guillermo Medina Reyes, Cruz Leandro Martinez Leiva, R.H.M., E.O.A.R., and the class they seek to represent (collectively, "Plaintiffs") seek this Court's intervention to halt egregious retaliation by Defendants in response to their peaceful hunger strike.[1] Plaintiffs began their hunger strike on February

_____
[1] One of the Individual Plaintiffs is the petitioner in a habeas action currently pending in the Northern District of California, in which he is proceeding under his initials because facts revealed in the habeas action would compromise his safety if tied to his identity. Federal Defendants' counsel is aware that this Individual Plaintiff is a party to both actions. Plaintiffs can provide further information to the Court under seal if the Court so orders.

17, 2023 and filed this putative class action on February 23, 2023. Plaintiffs are filing an amended complaint ("FAC") concurrently with this motion. While Defendants' pattern and practice of retaliation has been ongoing since the strike began, the severity of such retaliation escalated dramatically on March 7, 2023 and has continued, necessitating this motion. On March 7, ICE officers in military-style clothing from a San Francisco-based unit entered a dormitory, handcuffed the four Individual Plaintiffs, and violently removed them from the dormitory to be transferred to an out-of-state detention facility. Manuel Starr, Assistant Field Office Director of ICE's San Francisco Field Office, directed the transfer process and informed the Individual Plaintiffs that orders to do so had come from above him. Defendants also temporarily cut off Plaintiffs' access to attorney-client communication channels.

Defendant ICE held Individual Plaintiffs incommunicado and transferred them to a flight destined for El Paso, Texas. Defendants asserted that Individual Plaintiffs were being transferred to receive "medical care," but that assertion is belied by Defendants' brutal and degrading treatment of them. Defendants, among other abuses, taunted and threatened Individual Plaintiffs, repeatedly kicked Individual Plaintiff Dominguez Vidal, and ignored the actual medical needs of Individual Plaintiffs resulting from their violent removal from Mesa Verde. When Individual Plaintiffs were finally deposited in El Paso, they were not provided with any medical care beyond the standard care available in California. Defendant ICE threatened Individual Plaintiffs by stating that ICE was in the process of obtaining a court order to authorize force-feeding of them. Defendant ICE has told Individual Plaintiffs that they will be returned to California if they eat three meals, revealing the true purpose of the transfers—to coerce Individual Plaintiffs into ending their hunger strike. Moreover, Defendants have threatened additional Plaintiffs with imminent transfer to other detention facilities if they do not end their hunger strike. Further, an employee of Defendant ICE has attempted to interfere with this litigation by instructing a Representative Plaintiff and other Plaintiffs that ICE can only address the demands of the hunger strike if they drop their lawsuit.

Participation in a hunger strike is a form of protected speech under the First Amendment. Defendants' retaliatory actions have violated and continue to violate Plaintiffs' First Amendment

3

rights. Without emergency relief from this Court, Plaintiffs will continue to face reprisals for their engagement in protected conduct and will be dissuaded from continuing their peaceful protest.

## II.     FACTS

### A.     Plaintiffs Filed Suit Seeking to Enjoin Retaliation for First Amendment Activity.

Plaintiffs are approximately 82 persons detained in ICE custody at Mesa Verde and Golden State Annex who began a peaceful hunger strike on February 17, 2023. First Amended Complaint ("FAC") ¶ 3. Plaintiffs declared the hunger strike as a form of collective peaceful protest against their prolonged detention, abhorrent conditions of confinement, and poor treatment. *Id.* ¶ 29. The message and demands of the hunger strike were conveyed directly to Defendants through grievances filed at the facilities and publicly through the media and reporting. *Id.* ¶ 30-31.

In response to the peaceful hunger strike and beginning immediately upon Plaintiffs' declarations that they were beginning the hunger strike, Defendants engaged in retaliation. *Id.* ¶ 41-50. Defendants denied or restricted access to the law library, family visitation, church, yard time, and recreation activities; threatened and taunted Plaintiffs; made the temperature of the dorms uncomfortably cold; deprived Plaintiffs of essential non-food commissary items; and engaged in other harassment and threats to induce Plaintiffs to end their hunger strike. *Id.*

On February 23, 2023, six days after the beginning of the hunger strike, Plaintiffs filed suit in this Court seeking to enjoin Defendants from retaliating against them in violation of the First Amendment. ECF No. 1. The next day, Richard Chang, Assistant Field Office Director of ICE's San Francisco Field Office, traveled to Mesa Verde to meet with hunger strikers. Declaration of R.H.M ISO 2nd TRO Mot. ("R.H.M. Decl.") ¶ 4. Plaintiffs at Mesa Verde were later instructed that Richard Chang and his team have negotiating authority with regard to the hunger strikers' demands. *Id.* ¶ 4-6.

### B.     On March 7, 2023, Defendants Terrorized Hunger Strikers at Mesa Verde and Forcibly Transferred Four Plaintiffs.

Around 6:00 a.m. on March 7, 2023, multiple GEO staff members entered Mesa Verde Dorm C wearing helmets and hard plastic over their faces and chests, and carrying batons and pepper spray. *See* R.H.M. Decl. ¶¶ 8-11. GEO staff members turned off Plaintiffs' phone access, limited tablet

access, and made Plaintiffs feel they were being "held hostage." R.H.M. Decl. ¶ 12; Declaration of Ilyce Shugall ISO 2nd TRO Mot. ("Shugall Decl.")  ¶ 4.

Multiple GEO officers forcibly removed Individual Plaintiff Raymundo Noe Dominguez Vidal from the dorm. Declaration of Raymundo Noe Dominguez Vidal ISO 2nd TRO Mot. ("Dominguez Vidal Decl.") ¶¶ 5-6. R.H.M. Decl. ¶ 8; Shugall Decl. ¶ 6. Plaintiffs pleaded for confidential attorney calls, which the GEO staff members refused. Shugall Decl. ¶ 4; R.H.M. Decl. ¶¶ 8-12. Plaintiffs proceeded to use non-confidential tablet devices, two of which were still working, to share information with attorneys and loved ones. Shugall Decl. ¶ 9; *see* Declaration of Kelsey Morales ISO 2nd TRO Mot.  ("Morales Decl.") ¶ 7; Declaration of Eva Umejido ISO 2nd TRO Mot. ("Umejido Decl.") ¶ 4.

Around 8:00 a.m. on March 7, 2023, multiple officers arrived at Mesa Verde Dorm C in military-style clothing and gear. Umejido Decl. ¶ 4. Some officers appeared to be GEO officers in protective "riot" gear. R.H.M. Decl. ¶¶ 10, 13; Shugall Decl. ¶ 6. Others, who entered later, wore badges that read, "San Francisco Special Force Response Team" and "ICE." R.H.M. Decl. ¶ 13; Shugall Decl. ¶ 7; Morales Decl. Ex. A. Those officers demanded that all detained persons "[g]et on the floor." R.H.M. Decl. ¶ 8. The officers used force to throw multiple Plaintiffs to the ground. Shugall Decl. ¶ 8; R.H.M. Decl. ¶¶ 15-18; Umejido Decl. ¶ 5. The officers then handcuffed a total of four individuals—Individual Plaintiffs Figueroa-Padilla, Hernandez, Dominguez Vidal, and Franco Guardado—and removed them from the dorm. R.H.M. Decl. ¶¶ 8, 14; Shugall Decl. ¶ 7; Declaration of Katie Kavanagh ISO 2nd TRO Mot. ("Kavanagh Decl.") Ex. A; Declaration of Genna Beier ISO 2nd TRO Mot. ("Beier Decl."), Ex. A; Declaration of Laura Jones ISO 2nd TRO Mot. ("Jones Decl.") Ex. A; Declaration of Lee Ann Felder-Heim ISO 2nd TRO Mot. ("Felder-Heim Decl.") Ex. A.

At the time of the officers' arrival, Individual Plaintiff Figueroa-Padilla was using a tablet device to communicate with an immigration attorney. Umejido Decl. ¶ 4. An ICE officer grabbed the tablet from Figueroa-Padilla's hands and threw it to the ground. *Id.* The ICE officer handcuffed Figueroa-Padilla in a manner that caused him to scream from pain. *Id.* ¶ 5. Other Plaintiffs witnessed multiple officers on top of Figueroa-Padilla, while he exclaimed that he was not resisting arrest. R.H.M. Decl. ¶¶ 15-17; Shugall Decl. ¶ 8. Individual Plaintiffs were forcibly removed from the facility. An

5

ICE and GEO officer kicked Individual Plaintiff Dominguez Vidal multiple times. Dominguez Vidal Decl ¶ 6. The violence and stress caused Mr. Dominguez Vidal to faint and fall to the floor, where he laid crying. *Id.* ICE San Francisco Assistant Field Office Director Manuel Starr presided over the violence, and told Mr. Dominguez Vidal that he and the other officers were following orders. *Id.*

Later that evening, Defendants threatened the remaining hunger strikers in Dorm C to break their strike, or else face the same fate as their compatriots: they would be violently removed and transferred from the facility. R.H.M. Decl. ¶ 25. ICE Officer Mo told R.H.M. that if he wanted to see any improvements in the treatment of Plaintiffs, they would have to "drop the lawsuit." R.H.M. Decl. ¶¶ 23-24. Under these threats, some Plaintiffs at Mesa Verde temporarily paused their hunger strike with the intention to resume when they are able to do so. *Id.* ¶ 25-28.

### C. Federal Defendants and Their Agents Brutally Transferred, Harassed, and Continue to Threaten Individual Plaintiffs Under the Pretext of Providing "Medical Care."

Around 1:00 p.m. that same day, immigration counsels for Individual Plaintiffs received identical emails from ICE informing them that their client was transferred to a detention facility in El Paso, Texas. Kavanagh Decl. Ex. A; Beier Decl. Ex. A; Jones Decl. Ex. A; Felder-Heim Decl. Ex. A. The messages explained that the decision to transfer the clients was purportedly "based on the recommendation by the onsite medical authority to the IHSC facility located in El Paso, Texas, for a higher level of medical care." *Id*. None of the transferred individuals requested medical care leading up to their transfer. Kavanagh Decl. ¶ 4; Beier Decl. ¶ 4; Jones Decl. ¶ 4; Felder-Heim Decl. ¶ 4.

Pursuant to ICE policy, Defendant Becerra is responsible, either personally or through a designee, for decisions to transfer detained individuals. ICE Performance-Based National Detention Standards ("PBNDS") § 7.4 (stating that "[d]ecisions to transfer detainees are made by the Field Office Director or his/her designee").

Defendant ICE held Individual Plaintiffs incommunicado and placed them on a flight. Assistant Field Office Director Manuel Starr, based in San Francisco, directed the transfer operation and told the transferred Individual Plaintiffs that orders to do so had come from "higher up." Beier Decl. ¶ 6(i); Kavanagh Decl. ¶ 5(j). Defendants asserted to the Individual Plaintiffs that they were being transferred

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-CV-00829-TLT

to receive unspecified medical care. None had requested medical care, had consented to receive any medical procedures, or was in acute need of medical care. Beier Decl. ¶ 6; Kavanagh Decl. ¶ 5; Felder-Heim Decl. ¶ 5(e); Dominguez Vidal Decl. ¶ 5. Each of the Individual Plaintiffs were leaders in Dorm C during the hunger strike: they helped other file grievances, and helped to lead decision-making discussions about the labor and hunger strike. *Id.*

While removing and transferring Individual Plaintiffs, Defendants shackled and taunted Individual Plaintiffs, celebrated the removal of Named Plaintiffs from the facility, and made threatening remarks about what Named Plaintiffs would face when they were deposited in Texas. Kavanagh Decl. ¶¶ 5(g)-(l). ICE Assistant Field Office Director Nancy Gonzalez and GEO staff applauded as Individual Plaintiffs were forced into a transport van. *Id.*; Beier Decl. ¶ 6(d). In the van, ICE agents turned up the air conditioning extremely high. Beier Decl. ¶ 6(g); Felder-Heim Decl. ¶ 5(d). When Individual Plaintiffs requested more warmth, ICE agents turned the heat up all the way, causing Individual Plaintiff Hernandez to have the sensation that his eyes were burning. *Id.* When the vehicle stopped for a bathroom break, an ICE officer told Mr. Hernandez, "This is the last stop, the next stop is going to be hell." Beier Decl. ¶ 6(h). When they reached the airstrip, they were subjected to sexually abusive pat downs, including invasive touching of their genital areas. Kavanagh Decl. ¶¶ 5(o)-(p).

Indeed, despite the purported "medical" purpose of the transfer, Defendant ICE ignored the acute medical needs of Individual Plaintiffs, including one who lost consciousness in the transfer process, without providing any medical care or treatment to them. Dominguez Vidal Decl. ¶¶ 6-9, 10-11; Kavanagh Decl. ¶ 5(r); Beier Decl. ¶ 6(j). A GEO employee repeatedly kicked Mr. Dominguez Vidal in view of a San Francisco-based ICE official. Dominguez Vidal Decl. ¶ 6. When Individual Plaintiffs finally landed in Texas, ICE agents transporting them to the detention facility in El Paso drove recklessly, causing Individual Plaintiffs to hit their heads. Beier Decl. ¶ 6(j). When Individual Plaintiffs were deposited in El Paso, they were not provided with any medical care beyond the standard vitals check they had received in California. Dominguez Vidal Decl. ¶¶ 12-14.

Defendant ICE officers threatened the Individual Plaintiffs by telling them that ICE was in the process of obtaining a court order to authorize force-feeding. Beier Decl. ¶ 6(l). Defendant ICE has

7

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-CV-00829-TLT

also sought to manipulate some Individual Plaintiffs by telling them that they will be returned to California if they break their hunger strike by eating three meals in a row. Beier Decl. ¶ 6(p); Felder-Heim Decl. ¶ 5(i); Kavanagh Decl. ¶ 5(v). ICE threatened them with solitary confinement if they continue their hunger strikes. *Id.*

Under increasing duress and out of fear for their safety, on March 9, 2023 Individual Plaintiffs were forced to pause their hunger strike by eating their first meal in 20 days. Beier Decl. ¶ 6(q); Dominguez Vidal Decl ¶ 14; Felder-Heim Decl. ¶ 5(j); Kavanagh Decl. ¶ 5(w).

**D. Defendants Continue to Threaten Plaintiffs with Forcible Transfer if They Do Not End Their Strike.**

Throughout the hunger strike, ICE officers, GEO employees and medical staff have tried to dissuade Plaintiffs from continuing the hunger strike by taunting, mocking, and threatening them. Declaration of Cruz Leandro Martinez Leiva ISO 2nd TRO Mot. ("Martinez Decl.") ¶ 4. These threats became more powerful after the assaults and forcible removals of hunger strikers at Mesa Verde. *Id.* ¶ 5. Yesterday, March 9, 2023, Dr. Baruiz, a doctor onsite at Gold State Annex, told Representative Plaintiff Martinez and other Plaintiffs in Dorm A1 that today, March 10, 2023, would be the last opportunity for them to end their hunger strike. *Id.* ¶ 6. Dr. Baruiz threatened that if they continue their hunger strike, they would be transferred to a different detention facility "elsewhere." *Id.* ¶ 8. Plaintiffs in Dorm A1 had not experienced any acute medical distress and did not request any medical care. *Id.* ¶¶ 10-14. They understood her statements to be a threat. *Id*. *¶* 15.

**III.    ARGUMENT**

**A.    Venue is Appropriate in this District.**

On March 9, the Court instructed the parties to "be prepared to discuss at the next hearing why venue is appropriate in this district. See 28 U.S.C. § 1404(a)." ECF 28. For the reasons set forth below, this district is the appropriate venue.

In considering whether a change of venue is warranted, the Court "should consider private and public interest factors affecting the convenience of the forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F. 2d 834, 843 (9th Cir. 1986). Relevant to this action, those factors include: (1) the

8

plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) any local interest in the controversy; and (7) the relative court congestion and time of trial in each forum. *Decker Coal*, 805 F.2d at 843. "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Park v. Dole Fresh Vegetables, Inc.*, 964 F.Supp.2d 1088, 1093 (N.D. Cal. 2013) (citations omitted).

**Plaintiffs' choice of forum:** "[A] plaintiff's choice of forum is ordinarily given significant weight and will not be disturbed[.]" *Ctr. for Biological Diversity v. Kempthorne*, No. 07-cv-0894 EDL, 2008 WL 4543043, at *3 (N.D. Cal. Oct. 10, 2008); *see also Decker Coal*, 805 F.2d at 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). This is especially true when the plaintiff resides in the forum and the forum has a connection with the cause of action. *Id.* (denying transfer where plaintiff resided in forum, even though proposed transferee forum was "the only state with meaningful ties to the subject matter of the litigation"); *see also Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 780 (N.D. Cal. 20144) ((in denying transfer, court found plaintiff's choice weighed against transfer where only one of seven named plaintiffs resided in district); *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, No. 14-CV-05596-JST, 2015 WL 1738269, at *3 (N.D. Cal. Apr. 9, 2015).

In this case, four of the Named Plaintiffs reside in the Northern District for the purposes of venue.[2] FAC ¶¶ 14, 15, 17, 22.  Moreover, there are ample connections between the Northern District and this case. Federal Defendants conduct operations at the detention centers at issue in this case from ICE's San Francisco Field Office. FAC ¶¶ 11, 25. Plaintiffs' message and demands have been directed at ICE officials in San Francisco, including through a recent press conference in front of the San Francisco ICE Field Office and advocacy letter addressed to local ICE leadership, including Defendant

_____

[2] "One does not change his residence to the prison by virtue of being incarcerated there." *Cohen v. United States*, 297 F.2d 760, 774 (9th Cir. 1962), *cert. denied*, 369 U. S. 865. This principle applies to residency for the purpose of venue, which is determined by a person's domicile and remains undisturbed during incarceration as long as the incarcerated person intends to return. *See Branon v. Debus*, 289 F. App'x 181, 183 (9th Cir. 2008) (unpublished) (discussing in context of diversity of citizenship); *Smith v. Warren*, No. CIV. 10-838-BR, 2010 WL 3853198, at *2, n.1 (D. Or. Sept. 28, 2010) (same); 28 U.S.C. § 1391(c)(1) (defining residence as domicile).

9

Becerra. FAC ¶ 31. ICE's San Francisco Field Office has a long-standing pattern and practice of collaborating with GEO in retaliatory measures at the Facilities. FAC ¶¶ 92-97.

From within this District, Federal Defendants also orchestrated the violent response to the hunger strike and retaliatory transfers on March 7. On that morning an Assistant Field Office Director ("AFOD") from San Francisco and Manuel Starr and ICE officers wearing "ICE" and "San Francisco Special Force Response Team" badges entered a dorm at Mesa Verde wearing military-style clothing and gear, and brutally removed four hunger strikers. FAC ¶¶ 52-53. That same San Francisco AFOD accompanied the hunger strikers who were being transferred to the airstrip where they were flown to El Paso, explaining that the transfer order was "coming from higher up." FAC ¶ 58. These actions and statements are indicative of planning and deployment from within the San Francisco Field Office.

This is simply not a case where "[t]he plaintiff's preference may be given less weight" because "plaintiff sued in a district that has no obvious connection to the case." Wright, Miller & Cooper, 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed.); *see also Roling v. E\*Trade Securities, LLC,* 756 F. Supp. 2d 1179, 1186 (N.D. Cal. 2010) (finding "plaintiffs' choice of forum carries significant weight," even though not all of the plaintiffs resided in the forum, since at the time the lawsuit was filed the plaintiffs believed the defendant's headquarters were in the forum and "both the plaintiffs and the defendant have significant contacts" with the forum). Under the circumstances of this case, to overcome the strong presumption in favor of Plaintiffs' choice of forum, Defendants would have to show that the balance of convenience factors weighs "*strong[ly]*" in favor of transfer. *Decker Coal*, 805 F.2d at 843. As described below, that balance is either neutral or weighs in favor of the case remaining in this District.

**Convenience of the parties:** Defendants' officials are located in both the Northern and Eastern Districts. As a result, transferring the action will merely shift any travel burden from GEO's employees in the Eastern District (who would need to travel to San Francisco) to ICE's employees in the Northern District (who would need to travel to Fresno). "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack,* 376 U.S. 612, 645-46 (1964). This factor is thus presumptively neutral.

Moreover, even if GEO Defendants faced some greater inconvenience in having to travel to

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-CV-00829-TLT

San Francisco than the Federal Defendants would face in having to travel to Fresno, the proximity of the two districts would preclude this factor from taking on significant weight. Where transfer would be to a "contiguous district," a particularly strong balance of convenience in favor of transfer is required. *See In re Fenwick Island, Inc.*, 330 F. Supp. 1191, 1192 (E.D.N.C. 1971); *see also Roberts Bros., Inc. v. Kurtz Bros.*, 231 F. Supp. 163, 168 (D.N.J. 1964) (denying motion to transfer from New Jersey to "geographically adjacent" Pennsylvania, a neighbor "of such unusually close proximity"); *Flotsam of California, Inc. v. Huntington Beach Conference & Visitors Bureau*, No. 06-cv-7028, 2007 WL 1152682, at *2 (N.D. Cal. Apr. 18, 2007) (finding party's need to occasionally travel by air from Orange County to San Francisco "does not constitute the type of inconvenience that would warrant disturbing the plaintiff's choice of forum").

**Convenience of the witnesses:** This factor focuses on non-party witnesses, not party witnesses. *See Kaur v. U.S. Airways, Inc.*, No. C-12-5963 DMC, 2013 WL 181391, at *5 (N.D. Cal. May 6, 2013) ("The convenience of non-party witnesses is the most important convenience factor; more important that the convenience of party witnesses."); *Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009). Nearly all currently identifiable potential non-party witnesses are in the Northern District. *See* Felder-Heim Decl. ¶ 2; Jones Decl. ¶¶ 2, 4; Beier Decl. ¶ 2; Morales Decl. ¶ 2; Shugall Decl. ¶ 2.

The other likely witnesses are Defendant's employees. However, "the convenience of a litigant's employee witnesses are entitled to little weight because litigants are able to compel their employees to transfer at trial, regardless of forum." *Alul v. Am. Honda Motor Co., Inc.*, No. 16-cv-4384-JST, 2016 WL 7116934, at *4 (N.D. Cal. Dec. 7, 2016) (quoting *Lax*, 65 F. Supp. 3d at 779); *see also Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1084 (N.D. Cal. 2008) (citing *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) ("The Court, however, discounts any inconvenience to the parties' employees, whom the parties can compel to testify."); *Allstar*, 666 F. Supp. 2d at 1132 (similar). This factor accordingly weighs in favor of the case remaining in the Northern District.

**Ease of access to the evidence:** It is not clear whether there is any evidence located in another district that requires physical transport. In today's world, "given the modern advances in

11

communication and transportation" the "the location of the evidence . . . is no longer weighed heavily." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). Absent such physical evidence, this factor is neutral.

**Familiarity of each forum with the applicable law:** "[W]here federal law governs all claims raised, 'either forum is equally capable of hearing and deciding those questions.'" *Italian Colors Rest. v. Am. Express Co.*, No. C 03-3719 SI, 2003 WL 22682482, *3 (N.D.Cal. Nov.10, 2003) (quoting *DealTime.com Ltd. v. McNulty*, 123 F. Supp. 2d. 750, 757 (S.D.N.Y.2000)). Accordingly, this factor is neutral.

**Local interest in the controversy:** Certainly the Eastern District has some local interest in this action, that many events underlying Plaintiffs' action occurred there. But the Northern District too has such an interest. As described above, Federal Defendants' regional base of operations, which oversees the Facilities, is in San Francisco. And ICE orchestrated and ratified much of the challenged retaliation from its San Francisco Field Office. This provides the Northern District a local interest over the action as well. *See GameTek LLC v. Electronic Arts*, No. 12-CV-2927 BEN (RBB), 2013 WL 3864343, at *3 (S.D. Cal. July 23, 2013) ("EA's headquarters and other offices are located in the Northern District. In addition, *some* of the accused products were entirely designed and developed at EA's offices in the Northern District.") (emphasis added). This factor is likely neutral.

**Relative court congestion:** To measure congestion, courts compare the "median time from filing to disposition or trial" in the two fora. *Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*, 472 F. Supp. 2d 1183, 1196 (S.D. Cal. 2007). Where court action is required to resolve a case, the Northern District is much less congested than the Eastern District. Median time to disposition "before pretrial" in the Northern District is 7.4 months, compared to 13.1 months in the Eastern District. Median time to disposition "during or after pretrial" is 16.3 months in the Northern District, compared to 24.3 months in the Eastern District.[3] This factor weighs against transfer.

**Interests of justice:** Plaintiffs also have a strong interest in the prompt adjudication of their request for a TRO, without the delay that transfer to the Eastern District would cause. The Court would

[3] "U.S. District Courts - Median Time From Filing to Disposition of Civil Cases, by Action Taken," available at https://www.uscourts.gov/sites/default/files/data_tables/jb_c5_0930.2022.pdf.

12

be breaking no new ground in adjudicating this dispute. Courts regularly adjudicate civil rights lawsuits against state and federal agencies in fora where those agencies make operational decisions, even when some or all of the events in question occur elsewhere. *See, e.g., Joslyn v. Armstrong*, No. 3:01-cr-198-CFD, 2001 WL 1464780, at *1 (D. Conn. May 16, 2001) (denying to motion to transfer venue by the Director of the Connecticut Department of Correction in a lawsuit concerning conditions and mistreatment of Connecticut prisoners who were being held in a prison in Virginia); *Zepeda Rivas v. Jennings*, 3:20-cv-2731-VC (N.D. Cal. filed May 20, 2020) (class action challenging ICE and GEO's COVID-19 response at two detention centers physically located in the Eastern District, including Mesa Verde, which resulted in numerous court orders in plaintiffs' favor and the certification of a settlement class); *see Harvard v. Inch,* 408 F. Supp. 3d 1255, 1260–62 (N.D. Fla. 2019) (denying motion to transfer case to a contiguous district where "individual acts" occurred because these acts were "the manifestation of the policies and practices" that defendant promulgated in the instant district); *Aracely v. Nielsen*, 319 F. Supp. 3d 110, 129 (D.D.C. 2018) (citation omitted) (denying motion to transfer action to Texas because Texas-based defendants acted "in compliance with the official policies promulgated by the D.C. based Defendants").

### B.    Standard for Issuance of Temporary Restraining Order.

To succeed on a motion for temporary restraining order or preliminary injunction, a party must show that (1) they are likely to succeed on the merits of their claim; (2) they will suffer irreparable harm in the absence of relief; (3) the balance of hardships tips in their favor; and (4) a preliminary injunction is in the public interest. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

The four-part test is also satisfied if "serious questions going to the merits [are] raised and the balance of hardships tips sharply in the plaintiff's favor" so long as there is also a likelihood of irreparable harm and an injunction would be in the public's interest. *All for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

### C.    Plaintiffs are Likely to Succeed on the Merits.

Plaintiffs are likely to succeed on the merits of their First Amendment retaliation claim. A First Amendment retaliation claim requires that the plaintiff show "that (1) [they] engaged in constitutionally

13

protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Assoc. v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

Plaintiffs satisfy all three prongs. First, Plaintiffs have been engaged in a peaceful hunger strike to protest their mistreatment and conditions of confinement. Second, Defendants responded to Plaintiffs' protected activity by cutting off their access to the outside world, assaulting and handcuffing them, transferring Plaintiffs out of the facility, and threatening them in order to coerce them to end their strike. And, third, Defendants' actions were intended to suppress their hunger strike and dissuade them and other detainees from engaging in similar protected conduct in the future.  Thus, Defendants' actions constitute unlawful retaliation in violation of Plaintiffs' First Amendment rights.

### 1.    Plaintiffs' Participation in a Hunger Strike is Protected by the First Amendment.

First, Plaintiffs' participation in a hunger strike is a protected First Amendment activity. "The First Amendment literally forbids the abridgement only of 'speech,'" but "its protection does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). For this reason, the Supreme Court has clarified that the First Amendment does not solely protect the "spoken or written word," but also protects "conduct [that] may be 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.'" *Id.*; *see also Roulette v. City of Seattle*, 97 F.3d 300, 302-03 (9th Cir. 1996). When deciding whether expressive conduct "has sufficient communicative elements" for First Amendment protection, a court must ask whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Johnson*, 491 U.S. at 404 (internal citation omitted).

Hunger strikes constitute such protected conduct. In the carceral context, "a hunger strike may be protected by the First Amendment if it was intended to convey a particularized message." *Stefanoff v. Hays Cnty.*, 154 F.3d 523, 527 (5th Cir. 1998) (per curiam); *Dumbrique v. Brunner*, No. 14-CV-02598-HSG, 2016 WL 3268875, at *7 (N.D. Cal. June 15, 2016) ("A hunger strike that is intended to convey a particularized message and has a high likelihood of conveying that message is therefore

speech protected by the First Amendment."). Hunger strikes are uniquely expressive, given the hardship suffered by the speaker. *See F.T.C. v. Sup. Ct. Trial Lawyers Ass'n*, 493 U.S. 411, 450 (1990) (Brennan, J., dissenting). For this reason, hunger strikes are a "special form of political communication" that "convey[] an emotional message that is absent in . . . even a protest march." *Id.*

Here, Plaintiffs have engaged in a peaceful hunger strike to protest their mistreatment, abuse, and conditions of confinement. They intended to use the hunger strike to convey their grievances related to prolonged detention, labor exploitation, abuse, disrespect, mistreatment, and hygiene at the facilities. The intended audiences for these messages include the public and Defendants. Since the start of the hunger strike, Plaintiffs have successfully conveyed their message to these audiences, as demonstrated by extensive media coverage in which Defendants have been asked to respond to Plaintiffs' messages. *See, e.g.,* Cho Decl. ¶¶ 10-13, Exs. 8-11. There is little doubt that Plaintiffs' hunger strike constitutes expressive conduct protected by the First Amendment.

### 2. Defendants' Actions Would Chill a Person of Ordinary Firmness from Continuing Engagement in Protected Activity.

Second, Defendants' actions would chill a person of ordinary firmness from continuing to engage in protected activity. Defendants' use of force to throw several Plaintiffs to the ground and remove them from the facility for transfer out of state, intimidation tactics including swarming the dorm in military gear, and threats of force-feeding and solitary confinement, would have a chilling effect on an individual of ordinary firmness.

Indeed, in carceral settings, the Ninth Circuit has repeatedly recognized that aspects of the Defendants' conduct, even on their own, constitute unlawful adverse actions to sustain a First Amendment retaliation claim. Assaulting an individual in confinement for speaking out about conditions of confinement is prohibited by the First Amendment. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005) (finding First Amendment retaliation where officers assaulted incarcerated individual for filing grievance). In *Rizzo v. Dawson*, the Ninth Circuit recognized that retaliatory transfer of an individual from one prison to another constituted an adverse action, sufficient to sustain a First Amendment retaliation claim. 778 F.2d 527, 531–32 (9th Cir. 1985). The First Amendment

further prohibits the use of segregation as punishment for speaking out about conditions of confinement. *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) (ten-day confinement in segregation is sufficiently serious to support First Amendment retaliation claim).

Moreover, the Ninth Circuit has explained that the threat of retaliatory actions, including a transfer to a different facility, is sufficient to establish a chilling effect. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) ("The mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect.") (emphasis in the original); *see also Valandingham v. Bojorquez,* 866 F.2d 1135, 1138 (9th Cir. 1989) (holding that retaliatory actions by correctional officers to place incarcerated individual at risk of facing violence would violate the First Amendment). As one court summarized, "[a]dverse actions include threats of discipline, transfer, or harm and do not need to be an independent constitutional violation." *Venegas v. Cnty. of Riverside*, No. 518CV02293JLSSHK, 2022 WL 2199842, at *31 (C.D. Cal. Mar. 29, 2022) (citing *Brodheim*).

Here, there can be no doubt that the *combination* of Defendants' use of violence, sexual harassment, threats of force, intimidation tactics, and removal of Plaintiffs from the facility would chill a person of ordinary firmness. These tactics created feelings of terror in all Plaintiffs who witnessed them, in addition to the physical harm it wrought upon Individual Plaintiffs. *See, e.g.*, R.H.M. Decl. ¶¶ 17-18, 26-28; Umejido Decl. ¶ 5; Dominguez Vidal Decl. ¶¶ 6-7. . These feelings of terror were compounded by Plaintiffs' inability to use the dorm phones or most tablets to communicate with attorneys or loved ones on the outside. *Id.* ¶¶ 7-8; *see also* Kavanagh Decl. ¶ 5(b); Beier Decl. ¶ 6(i); Shugall Decl. ¶¶ 9-10. Defendants' ongoing retaliatory acts have caused Plaintiffs to feel isolated, targeted, and frightened, and have led several Plaintiffs to temporarily break their hunger strike out of fear of further reprisals. R.H.M. Decl. ¶¶ 26-27; Dominguez Vidal Decl. ¶ 14; *see also* Morales Decl. ¶ 6. And, for Individual Plaintiffs who were transferred to Texas, Defendant ICE's tactics ultimately forced them to abandon their engagement in protected activity: they broke their hunger strikes out of fear for their safety. *See* Beier Decl. ¶ 6(q)-(r); Kavanagh Decl. ¶ 6; Dominguez Vidal Decl. ¶ 14.. And Plaintiffs who remain in Golden State and Mesa Verde continue to face threats to face the same fate as Individual Plaintiffs if they do not break their hunger strike. *See, e.g.,* Martinez Decl. ¶¶ 14-17.

Moreover, "as [the Ninth Circuit] has stated multiple times, "a retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights." *Brodheim*, 584 F.3d at 1269–70 (citing *Gomez v. Vernon,* 255 F.3d 1118, 1127 (9th Cir. 2001); *Hines,* 108 F.3d at 269). For all the reasons explained above, Plaintiffs easily meet that standard.

### 3. Plaintiffs' Protected Activity was a Substantial Motivating Factor Behind Defendants' Actions.

To establish retaliatory motive, a plaintiff must show that their protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim*, 584 F.3d at 1269–71. A plaintiff may provide facts indicating direct evidence or circumstantial evidence of a defendant's alleged retaliatory motive, including: "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." *McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011). To "prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). A plaintiff must show that the defendant's retaliatory animus was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (quoting *Hartman*, 547 U.S. at 260).

Here, there exists ample evidence demonstrating Defendants' retaliatory motive was a "but-for" cause of their adverse actions.

First, the proximity in time between Defendants' retaliatory actions and Plaintiffs' protected conduct is unambiguous. Defendants' actions on March 7, 2023 occurred in the midst of Plaintiffs' ongoing hunger strike, and took place in Dorm C of Mesa Verde – the only dorm housing hunger strikers, and designated as the only space in Mesa Verde where hunger strikers are allowed to stay. Defendants specifically targeted individuals for arrest who remained on hunger strike 19 days into the strike. Additionally, Defendants' increasingly aggressive use of sexually abusive pat downs whenever Plaintiffs move around Mesa Verde has coincided with Plaintiffs' hunger strike and participation in

this litigation. *See* R.H.M. Decl. ¶¶ 29-36.

Second, Defendants repeatedly expressed their opposition to Plaintiffs' hunger strike. For example, on the evening of March 7, GEO employees threatened the remaining hunger strikers in Mesa Verde to break their strike, or else face the same fate as their compatriots who were transferred out of state. *Id.* ¶¶ 22-25. This threat indicated Defendants' intent to harm Plaintiffs for their participation in protected activity. That same evening, ICE Officer Mo told Representative Plaintiff R.H.M. that if he wanted to see improvements in the treatment of Plaintiffs, they would have to "drop the lawsuit," referring to *this* lawsuit.[4] *Id.* ¶¶ 23-24. Further, ICE officers repeatedly threatened the four Individual Plaintiffs with force-feeding and solitary confinement *unless* they agreed to end their hunger strike.

Third, Defendants failed to provide any justifications for their adverse actions at the time that they took them, and the post facto rationales that they have offered are false and pretextual. When Defendants stormed Mesa Verde on March 7, Plaintiffs were quietly sleeping. There was no basis for officers to arrive with batons and pepper spray, demand that everyone drop to the floor, and tackle and handcuff Individual Plaintiffs. Defendants refused to provide any explanation for their actions to Plaintiffs during or in the hours after these incidents. When Representative Plaintiff R.H.M. attempted to speak with Defendant Vazquez about whether Defendants were retaliating against Plaintiffs for their participation in the hunger strike, Defendant Vazquez smirked at R.H.M. R.H.M. Decl. ¶ 21.

Defendants eventually provided conclusory email notifications to the attorneys of the individual who were removed from the facility. Those emails claim that those individuals are were transferred to El Paso, Texas in order to obtain medical care that is not available at Mesa Verde. Defendants fail to specify what medical care is needed, nor do they provide any explanation for why such care can only be obtained by forcibly transferring Plaintiffs from California to Texas. This post facto rationale is pretextual and false. At no point did any of those individuals seek medical care. They were not in any acute need when they were forcibly removed from the facility. Defendants' justification does not

---

[4] To the extent ICE Officer Mo's statement can be interpreted as hostility to this lawsuit itself, rather than the underlying conduct the lawsuit seeks to protect (the hunger strike), it makes no difference, as the Ninth Circuit has explained that a plaintiff's allegation of retaliation because they "exercised his First Amendment rights to. . . seek access to the legal process" is "the very archetype of a cognizable First Amendment retaliation claim." *Rhodes*, 408 F.3d at 568.

18

withstand scrutiny. Effectuating violent arrests against individuals who have not eaten food in 18 days cannot plausibly be considered to be a necessary medical response.

Moreover, throughout Defendants' violent transfer of Individual Plaintiffs and confinement of those individuals in Texas, Defendants' actions have undermined their stated purpose of providing those individuals with enhanced medical care. Defendants expressly *declined* those individuals' requests and visible need for medical care when Individual Plaintiff Dominguez Vidal lost consciousness under the stress of the transfer and when others requested to be taken to a community hospital before boarding the flight to Texas. And while in Texas, Individual Plaintiffs have not been provided with any medical care that they were not already able to obtain in Mesa Verde, and, instead, were expressly told by Defendant ICE that they could return to California as soon as they broke their hunger strike. These statements evince the true purpose of transferring the Individual Plaintiffs: to break their will and spirit in order to coerce them to abandon their protected activity.

Defendants continue to rely on the false pretext of "medical" care to threaten Plaintiffs to end their hunger strike. Representative Plaintiff Martinez Leiva and other Plaintiffs were threatened with transfer to another facility based on health concerns if they do not break their strike today, March 10, 2023. Yet, no explanation was given for what those health concerns are, what medical attention would be given, and why such care could not be provided at the facility or nearby community hospital. Instead, Defendants rely on the specter of the recent transfer to intimidate Plaintiffs into ending their strike.

Finally, that Defendants' rationales are pretextual is further evinced by the fact that Defendants' actions are consistent with their pattern of retaliation against individuals involved in collective, peaceful protest. Defendants have previously subjected individuals involved in filing grievances, complaining about mistreatment, and demanding legal accountability with threats of transfer to out-of-state facilities, imposition of solitary confinement, and forcing them to endure sexually abusive searches. *See* Cho Decl. ¶¶ 7-9, Exhs. 5-7 (complaints filed with the U.S. Department of Homeland Security's Office for Civil Rights and Civil Liberties between August 2021 and January 2023).

In short, Plaintiffs have satisfied each of the three prongs of a First Amendment retaliation claim, and, thus, have demonstrated a likelihood of success on their claim.

19

**4.    Defendants' Retaliatory Actions Also Lack Any Legitimate Institutional Basis.**

In the Ninth Circuit, a heightened standard applies to a First Amendment retaliation claim if raised by a duly incarcerated person serving a punitive sentence. An incarcerated person's First Amendment retaliation claim requires allegations that "(1) . . . [an] actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567–68. The Ninth Circuit has expressly stated that this heightened First Amendment retaliation standard applies "within the prison context" *Id.* at 567; *Turner v. Safley*, 482 U.S. 78, 89 (1987) (constitutional standards for prisons are relaxed based on the idea that an infringement of "inmates' constitutional rights" might be "valid if it is reasonably related to legitimate penological interests.").

The Ninth Circuit has *never* held that this heightened standard applies to a First Amendment retaliation claim raised by individuals like Plaintiffs, people subject to civil confinement in ICE custody. Indeed, at least one district court in California has expressly rejected the application of this heightened standard to claims arising out of the context of ICE custody: "As an initial matter, the Court rejects DHS's argument that the standard for First Amendment retaliation claims within the prison context applies here. DHS provides no authority extending this heightened standard to civil immigration detention." *Freedom for Immigrants v. U.S. Dep't of Homeland Sec.*, No. 219CV10424ABGJSX, 2020 WL 2095787, at *3 (C.D. Cal. Feb. 11, 2020) (internal citations omitted). "Moreover, because detention of immigrants by DHS is civil confinement, not criminal confinement, 'we assume that [it] [is] nonpunitive in purpose and effect.'" *Id.* at *3 n.2 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)); *see also E.O.H.C. v. Barr*, 434 F. Supp. 3d 321, 337 (E.D. Pa. 2020) (applying generic First Amendment retaliation standard to claims by habeas petitioners in ICE custody) *order vacated, appeal dismissed as moot sub nom. E.O.H.C. v. Att'y Gen. United States,* 2020 WL 2111302 (3d Cir. Apr. 20, 2020).

But even if this Court holds that the heightened standard applies to civil immigration detention, Defendants' actions on the morning of March 7 constitute unconstitutional retaliation in response to

20

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-CV-00829-TLT

Plaintiffs' peaceful, First-Amendment-protected conduct. The additional factor under *Rhodes* beyond the generally-applicable First Amendment retaliation standard already discussed is whether Defendants' actions reasonably advanced a legitimate correctional goal. *Rhodes*, 408 F.3d at 568. Defendants' actions here did not do so.

"A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were 'unnecessary to the maintenance of order in the institution.'" *Watison v. Carter*, 668 F.3d 1108, 1114–15 (9th Cir. 2012). Even where a Defendant tries to articulate a post-hoc legitimate institutional interest, actual retaliatory motive and arbitrary actions invalidate that interest. *See Clement v. California Dept. of Corr.*, 364 F.3d 1148, 1152 (9th Cir. 2004).

As discussed above, *see supra* Section II.C., Defendants cannot offer any legitimate justification for their actions against Plaintiffs, demonstrating that their actions were "arbitrary and capricious." There is no conceivable justification for storming a dorm of hunger-striking Plaintiffs in military gear, armed with batons and pepper spray, and violently arresting individuals.

Nor were Defendants' actions necessary to the maintenance of security or order of Mesa Verde. Peaceful hunger strikes do not pose a threat to security or order. In fact, ICE's Performance-Based National Detention Standards, which govern the operation of ICE detention facilities across the country, explicitly contemplate that individuals in custody may choose to engage in hunger strikes—demonstrating that ICE accepts the premise that hunger striking is permissible conduct by detained persons. *See generally* PBNDS § 4.2, pp. 253-56. The PBNDS outline how facility operators should respond to hunger strikes, and provide the permissible bounds for those facility operators' actions. Nothing in these provisions remotely suggests that the use of physical violence, retaliatory transfers, or deprivation of access to attorneys are appropriate responses to a hunger strike.

To the extent Defendants intend to cite purported medical justifications for their treatment of Plaintiffs, those justifications do not hold water. First, none of the Individual Plaintiffs had requested medical care or were in acute need of medical care. Second, the violent and degrading manner in which Defendants treated the Individual Plaintiffs undermines any notion that the transfers were undertaken

21

for the purpose of protecting them. Third, ICE's failure to provide any specialized medical care following the transfers further reveals their justification as false. Finally, there is no plausible reason why any medical needs associated with a hunger strike cannot be met in a local hospital. *See* PBNDS § 4.3, p. 260 (providing that every ICE facility must give its detained population access to "[h]ospitalization as needed within the local community").

Taken together, these circumstances show that Defendants' actions were retaliatory, unconstitutional, and without justification. Plaintiffs, thus, have shown a likelihood of success even if the Court were to apply a heightened standard to their claim.

### D.    Plaintiffs Satisfy the Remaining Factors for Preliminary Relief.

#### 1.    Unconstitutional Retaliation in the Form of Involuntary Transfers, Physical Violence, and Deprivation of Access to Attorneys Constitutes Irreparable Harm.

Plaintiffs will suffer irreparable harm absent this Court's intervention. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 995-96 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)) (internal quotation marks omitted). Thus, a finding that Plaintiffs are likely to succeed on the merits of their First Amendment claim necessarily means that they have "carried their burden as to irreparable harm." *Id.* at 995.

Further, the particular forms of retaliation that have taken place, including involuntary transfers to other ICE detention facilities, the use of physical violence against detained individuals, and intentional deprivation of access to attorneys, are likely to interfere with Plaintiffs' ability to adequately prepare for their immigration proceedings and otherwise irreparably harm them. *See, e.g.*, *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 778 (N.D. Cal. 2019) (recognizing negative impact on ability to prepare for immigration case as irreparable harm warranting temporary restraining order). For example, Individual Plaintiff Jose Ruben Hernandez has an immigration court hearing Los Angeles, California on March 17, 2023. Beier Decl. ¶ 7. His detention hundreds of miles away from his counsel, and with limited ability to schedule confidential attorney-client calls, is impeding his ability to prepare for his hearing with his counsel, attorneys with the San Francisco Office of the Public Defender. *Id.*

22

Representative Plaintiff R.H.M. has been traumatized by the display of force that he witnessed and continues to fear for his safety and compromise his expressive conduct as a result. R.H.M. Decl. ¶¶ 26, 28. Representative Plaintiff Martinez Leiva is burdened by the threat of violence, forcible transfer, and involuntary medical treatment unless he succumbs to Defendants' pressure to end his hunger strike today, March 10. Martinez Decl. ¶¶ 13-17.

The emergency relief Plaintiffs request is necessary to prevent these irreparable harms. Federal Defendants must halt their continued detention of Individual Plaintiffs in El Paso and return them to Mesa Verde to ensure that Individual Plaintiffs have the support of their counsel in preparing for their immigration proceedings. Return of Individual Plaintiffs to Mesa Verde is also critical to protecting the First Amendment rights of all Plaintiffs by demonstrating that ICE's retaliation is unlawful and will not be permitted to continue. Federal Defendants must be required to provide notice to counsel and the Court in advance of seeking authorization to force feed any Plaintiffs to ensure Plaintiffs can have access to counsel and make informed decisions. And all Defendants must be enjoined from further retaliatory violence, sexual abuse, and other misconduct.

### 2. The Public Interest and Balance of Equities Weigh Heavily in Plaintiffs' Favor.

When the government is the opposing party, as it is here, the last two stay factors–balance of equities and the public interest–merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the balance of equities and public interest clearly favor Plaintiffs. In the absence of relief, Plaintiffs will be subjected to physical force, denied access to their legal counsel, and transferred to other detention facilities– further impeding their communication with attorneys. The public as whole has an interest in upholding constitutional rights. *Sammartano v. First Judicial Dist Ct.*, 303 F.3d 959, 974 (9th Cir. 2002) (courts "have consistently recognized the significant public interest in upholding First Amendment principles"); *see Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Defendants' unconstitutional actions undermine society's confidence that our government respects the rule of law and the constitutional rights of all. The interests of Plaintiffs, who are engaged in peaceful protest while pursuing their rights in immigration court, are

fully aligned with the interests of the public.

On the other hand, "there is no harm to the Government when a court prevents the Government from engaging in unlawful practices." *Castillo v. Barr*, 449 F. Supp. 3d 915, 923 (C.D. Cal. 2020) (citing *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)). Therefore, there is little or no supposed hardship to Defendants.

**E.    Justice Requires and the Court is May Grant Comprehensive Relief for the Class.**

In addition to relief for each of the Individual and Representative Plaintiffs, the Court has authority to grant a classwide temporary restraining order that protects class members from further unlawful retaliation and stopping the unlawful retaliation that is currently in process. "By their very nature, preliminary injunctions are properly entered in emergency situations to enjoin imminent, irreparable harm." *Chhoeun v. Marin*, 306 F. Supp. 3d 1147, 1164 (C.D. Cal. 2018). In this case, the "impending irreparable harm" described above requires emergency relief "before the parties can engage in the lengthy process of gathering evidence and submitting arguments in support of a motion for class certification." *Id.* "There is no authority that suggests putative class members are not entitled to any injunctive relief while they await class certification." *Id.*

In recognition of these principles, "class-wide relief has sometimes been granted prior to class certification when such broad-based relief is necessary to effectuate relief for the individual plaintiffs, such as in the context of desegregation." *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, No. 19-CV-00792-EMC, 2020 WL 4458908, at *3 (N.D. Cal. May 27, 2020). This is particularly the case where, as here, relief other than on a class-wide basis would leave Plaintiffs at "significant risk for repeated rights violations," and "where it is necessary to preserve the status quo," including prior to class certification. *Id.* (internal quotation marks omitted); *see id.* ("[W]hen class-wide preliminary injunctions are granted prior to class certification, they overwhelmingly involve government defendants and operate to maintain the status quo.").

Class-wide relief is also appropriate here because it is "necessary to give [the] parties the relief to which they are entitled." *Price v. City of Stockton*, 390 F.3d 1105, 1118 (9th Cir. 2004) (upholding injunction providing benefits to non-parties); *see also J.L. v. Cissna,* 341 F. Supp. 3d 1048, 1070 (N.D.

Cal. 2018) (class-wide preliminary injunctive relief necessary to prevent irreparable harm to the putative class). Only class-wide relief can put an end to retaliation that chills protected speech for *all* putative class members. Defendants violently arrested Individual Plaintiffs *in full view* of multiple Representative Plaintiffs and members of the proposed class. R.H.M. Decl.¶¶ 3, 9-14. Witnessing such violent retaliation, "[t]o see them get their arms twisted, to hear them screaming, to see three officers on top of them, grabbing their legs, sticking knees into their backs, heads, and necks," and know you could be next, would chill any person of ordinary firmness from engaging in the protected activity of hunger striking—and has chilled Plaintiffs. R.H.M. Decl. ¶ 26. Absent class-wide emergency relief, Defendants could continue to pick off hunger strikers who are not Representative or Individual Plaintiffs for retaliation that intimidates and terrifies Representative Plaintiffs–and thus chills their speech.

## IV.    SECURITY

"Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday,* 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). District courts routinely exercise this discretion to require no security in cases brought by indigent and/or incarcerated people. *See, e.g., Toussaint v. Rushen,* 553 F. Supp. 1365, 1383 (N.D. Cal. 1983) (state prisoners); *Orantes–Hernandez v. Smith,* 541 F. Supp. 351, 385 n. 42 (C.D. Cal. 1982) (detained immigrants). This Court should do the same.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court grant Plaintiffs' motion for a temporary restraining order.

Dated: March 10, 2023                                Respectfully submitted,

                                                     AMERICAN CIVIL LIBERTIES UNION
                                                     FOUNDATION OF NORTHERN CALIFORNIA

                                                     /s/ *Michelle (Minju) Y. Cho*
                                                     Michelle (Minju) Y. Cho

                                                     *Attorneys for Petitioners-Plaintiffs*

PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
FOR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:23-CV-00829-TLT