| | |
|---|---|
| BRIAN BOYNTON | MICHELLE M. RAMUS |
| Principal Deputy Assistant Attorney General | Trial Attorney |
| Civil Division | Office of Immigration Litigation |
| WILLIAM C. PEACHEY | District Court Section |
| Director | United States Department of Justice |
| ELIANIS PEREZ | P.O. Box 868, Ben Franklin Station |
| Assistant Director | Washington, DC 20044 |
| SARAH B. FABIAN | Tel.: (202) 532-4525; Fax: (202) 305-7000 |
| Senior Litigation Counsel | Michelle.M.Ramus@usdoj.gov |
| ANNA L. DICHTER | |
| JAMES C. GRAULICH | |
| Trial Attorneys | |

*Counsel for Defendants*

**RE: Informal Letter Brief in Opposition of Plaintiffs' Motion for a TRO in *Milton Mendez, et al. v. U.S. Immigration and Customs Enforcement, et al.*, No. 3:23-cv-00829**

March 13, 2023

Hon. Trina L. Thompson
U.S. District Court for the Northern District of California
San Francisco Courthouse, Courtroom 9, Floor 19
450 Golden Gate Avenue
San Francisco, CA 94102

Your Honor:

      Federal Defendants U.S. Immigration and Customs Enforcement ("ICE"); Tae D. Johnson, in his official capacity as Acting Director of ICE; and Moises Becerra, in his official capacity as Director of the San Francisco Field Office of ICE (collectively, "Defendants") oppose Plaintiffs' motion for a temporary restraining order ("TRO"), ECF No. 31. Defendants take Plaintiffs' allegations very seriously and continue working to investigate and prepare a factual response to the allegations in Plaintiffs' Complaint and Motion for a TRO; however, a complete response to these factual allegations is not possible before tomorrow's hearing on Plaintiffs' motion for a temporary restraining order. Accordingly, Defendants submit the below informal letter brief in opposition to Plaintiffs' motion and respectfully request that if the Court intends to consider any grant of relief, Defendants should be permitted additional time to respond to the factual allegations Plaintiffs have submitted.

Dated: March 13, 2023

                                                 Respectfully submitted,
                                                 BRIAN BOYNTON
                                                 Principal Deputy Assistant Attorney General
                                                 U.S. Department of Justice, Civil Division

                                                 WILLIAM C. PEACHEY
                                                 Director

ELIANIS PEREZ
Assistant Director

SARAH B. FABIAN
Senior Litigation Counsel

ANNA L. DICHTER
JAMES C. GRAULICH
Trial Attorneys

/s/ *Michelle M. Ramus*
MICHELLE M. RAMUS
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation – DCS
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel:   (202) 532-4525
Fax:   (202) 305-7000
Email: Michelle.M.Ramus@usdoj.gov

*Counsel for Defendants*

I.   INTRODUCTION

A TRO should not issue in this case for multiple reasons. First, a TRO is improper where, as here, it seeks to alter the status quo. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). As the declaration and policies attached hereto (or referenced below) show, the care—including possible transfer—of individuals participating in a hunger strike is subject to discretionary determinations by ICE that are made based on considerations that take into account the health and safety of all detainees, as well as operational capabilities at various ICE facilities. A TRO would not preserve the status quo under which such decisions are made, but rather would prevent ICE from conducting its operations in accordance with these policies. Consequently, a TRO here would have the effect of endangering the very individuals who Plaintiffs seek to protect. Second, a class-wide TRO is not proper here where Plaintiffs have not filed for class certification. The relief Plaintiffs seek is overly broad and is not tailored to provide relief to the specific Plaintiffs who are in fact before this Court. Finally, this Court lacks jurisdiction to grant the class-wide relief Plaintiffs seek. Specifically, this Court lacks jurisdiction to grant class-wide injunctive relief that interferes with ICE's execution of its detention responsibilities under the Immigration and Nationality Act ("INA"), including the ability to transfer detainees and choose where they are detained. 8 U.S.C. § 1252(f)(1); *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2060–68 (2022). For all these reasons, a TRO should not issue, and the Court should order a briefing schedule that allows for a full and fair opportunity for briefing on these issues.

II.   FACTUAL BACKGROUND

A.  **ICE's Hunger Strike Protocol and Directive**

A hunger strike is defined in the Performance-Based National Detention Standards 2011 ("PBNDS")[1] as a "voluntary fast undertaken as a means of protest or manipulation." PBNDS Standard 7.5. "Whether or not a detainee actually declares that he or she is on a hunger strike, staff are required to refer any detainee who is observed to not have eaten for 72 hours for medical evaluation and monitoring." *Id.* ICE also follows its Health Service Corps' Hunger Strike Directive ("Hunger Strike Directive"), effective November 27, 2020, which further "set[s] forth policies and procedures for the identification, care, and management of detainees who are determined to conduct a hunger strike." *See* Ex. A (containing the Hunger Strike Directive). ICE's hunger strike policies are grounded in ICE's commitment "to ensuring that every person detained in its custody receives timely access to necessary and appropriate medical, dental, and mental health care and treatment while in custody. The health, safety, and welfare of those detained in its custody are among agency's highest priorities." Ex. B, Decl. of Dr. Jamal K. Gwathney, ¶ 2 (March 13, 2023).

ICE's hunger strike protocol is specifically governed by PBNDS Standard 4.2. A detainee is on a hunger strike when he or she is observed not to have eaten for 72 hours. *See* PBNDS Standard 4.2(V)(B)(1); *see also* Hunger Strike Directive at 4. In practice, this means that a detainee must miss nine consecutive meals to be on a hunger strike. Hunger Strike Directive at 4. All

---

[1]   Conditions of detention at the Mesa Verde and Golden State Annex facilities are governed by the PBNDS 2011. Available at https://www.ice.gov/detention-standards/2011 (last visited March 13, 2023).

facilities must notify the local ICE Field Office Director or his/her designee when an ICE detainee begins a hunger strike. *See* PBNDS Standard 4.2(V)(B). ICE's hunger strike protocol also sets forth a process for monitoring a hunger-striking detained individual's food and liquid intake, medical monitoring, mental health assessment, as well as advising the detainee about the medical risks associated with refusal of treatment. Hunger Strike Directive at 6-2. The hunger strike protocol requires "reasonable efforts to educate and encourage the detainee to accept treatment voluntarily." *See* PBNDS Standard 4.2(V)(D), (E). The Clinical Director should "recommend transfer to a hospital or a detention facility appropriately equipped for treatment, if medically necessary." Hunger Strike Directive at 5-2.2. Physicians must "[p]rovide clinical assessment and recommend treatment, intervention, and follow-up." *Id.* at 5-3.3. Hunger strike monitoring is discontinued only after the patient consumes sufficient calories to meet his or her body requirements, *i.e.*, consuming at least two regularly issued facility meals. *Id.* at 6-7.3.a. If the hunger strike leads to a weakened condition which threatens the patient's life or long-term health, a physician, such as the Clinical Director, will decide, based on their clinical judgment, whether to recommend involuntary treatment. *Id.* at 6-5.4. In such cases requiring involuntary medical treatment, such as involuntary hydration or feeding, ICE seeks a court order to do so. *Id.* at 6-6.1.

### B. ICE's Transfer Directive and Transfer Protocol for Individuals on Hunger Strike

ICE's Policy 11022.1: Detainee Transfers ("Transfer Directive"), effective January 4, 2012, consolidates policies on how ICE employees at field offices conduct transfers out of the Area of Responsibility. *See* Ex. C (containing the Transfer Directive). The Transfer Directive instructs that "all necessary notifications are made to detainees and their attorneys when detainees are transferred" to another detention facility. Transfer Directive at 5.3(1). Notification of the detainee's attorney must occur "as soon as practicable on the day of the transfer, but in no circumstances later than twenty[-]four (24) hours after the transfer occurs." *Id.* at 5.3(2)(a). To ensure the safety of ICE personnel, the detainee "[i]s not permitted to make or receive any telephone calls" or to "have contact with any detainee in the general population until the detainee reaches the destination facility." *Id.* at 5.3(3)(a)(i)–(ii).

At any time, an individual in ICE care "may be referred to an IHSC staffed facility or an outside medical facility if there is currently, or potential for, clinical progression of a severe medical condition resulting from a hunger strike, requiring medical services outside the scope of the originating facility, or if IHSC determines an independent medical opinion is warranted." Gwathney Decl. ¶ 6. If an individual's condition weakens to a point "which threatens the patient's life or long-term health, a physician, such as the Clinical Director, will collaborate with the Regional Clinical Director, and will decide, based on their clinical judgment, whether to recommend transfer of the patient to a higher level of care." *Id.* The Regional Clinical Director will coordinate within her/his region or with other Regional Clinical Director's to find a facility that meets the patients' needs. *Id.*

Transfer decisions are based on several factors including, but not limited to, anticipating both short-term and long-term needs in the management of the hunger strike patient or group. *Id.* ¶ 7. Short-term needs may include the availability of a medical housing unit, adequate access to area hospitals, and availability of a physician (or multiple physicians and other medical staff) to oversee the care. *Id.* Long-term needs may include the facility staff's knowledge and/or experience in addressing re-feeding syndrome once a hunger strike has ended. *Id.* Based on the needs, the

clinical rationale involved may vary based on the originating facility's ability to manage the patient or group. *Id.* Clinically, it is prudent to transfer a patient to a facility capable of providing higher level of care before the patients reach more critical stages that could compromise clinical stability and travel clearance. *Id.*; *see id.* ¶ 8 ("The higher level of care includes providing diagnostic, interventional, or access to hospital care beyond the capacity of the facility from which a patient originates."). If after a careful review of medical documents and in consideration of the ongoing effects of the hunger strike, medical personnel conclude that an individual or group needs a higher level of care, a request will be made to transfer a patient or patients to a facility with the appropriate clinical resources. *Id.* at 9.

### C. ICE's Appropriate Housing Placement for Complex Patients Directive

ICE Health Service Corps' Directive on Appropriate Housing Placement for Complex Patients ("Housing Directive"), effective February 2, 2022, sets forth policies and procedures for ensuring continuity of care for ICE detainees with complex medical or behavioral health needs in IHSC and non-IHSC-staffed facilities. *See* Ex. D (containing the Housing Directive). According to the Housing Directive, detainees with complex medical cases should be transferred to the proper facilities and community resources when a transfer is clinically indicated. Housing Directive at 4. IHSC ensures its patient population does not meet any unreasonable barriers to receiving health care and are not punished for seeking care. *Id.* If a detainee requires a high level of care, such a determination is made based on medical record review and information provided by the responsible health authority within the facility. *Id.* at 6-1. If medically indicated, transfers are coordinated from non-IHSC-staffed and IHSC-staffed facilities to higher level of care. *Id.* at 6-2. A Facility Classifications Tool is used to determine the facility for proper care and services. *Id.*

### III. LEGAL STANDARD

The standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (internal quotations omitted); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). In moving for a TRO, plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Id.*

The Ninth Circuit has adopted a "sliding scale" test for issuing TROs, under which "serious questions going to the merits and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011) (emphasis added). Thus, Plaintiff must show that the TRO is in the public interest and that there is a likelihood, not merely a possibility, of irreparable injury. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

As the function of a preliminary injunction is to maintain the status quo before the case is adjudicated on the merits, there is "heightened scrutiny" for mandatory preliminary injunctions.

*Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993). However, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984); *see also Committee of Cent. American Refugees v. Immigration & Naturalization Service*, 795 F.2d 1434, 1442 (9th Cir. 1986). For mandatory preliminary relief to be granted, Plaintiff "must establish that the law and facts clearly *favor* [his] position." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in original).

IV.     **ARGUMENT**

    **A. The TRO That Plaintiffs Seek Is Improper and Overbroad.**

        **1. Plaintiffs Improperly Seek to Alter the Status Quo.**

Plaintiffs' TRO is improper because it seeks to change the status quo. *See generally* Pls.' Mot. for TRO, ECF No. 31. The purpose of a preliminary injunction is to preserve the status quo between the parties pending a resolution of a case on the merits, *see U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). Plaintiffs' motion inverts the fundamental purpose of preliminary injunctive relief, which is "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Such a "mandatory injunction," as it is known, is granted only in extraordinary circumstances and is "particularly disfavored." *See LGS Architects, Inc. v. Concordia. Homes of Nevada*, 434 F.3d 1150, 1158 (9th Cir. 2006); *see also Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (noting that "courts have recognized very few circumstances justifying the issuance of an ex parte TRO").

Here, Plaintiffs instead ask this Court to alter the status quo by issuing an order that would require ICE to go against their standards, policies and directives that govern treatment of individuals on a hunger strike in ICE care. The Court should be particularly cautious about ordering the relief requested by Plaintiffs without providing a full and fair opportunity for briefing to determine whether ICE's actions, including medical treatment and transfer to facilities with more appropriate medical treatment capabilities, comply with the standards, policies, and directives governing these situations. ICE has a duty to maintain order in detention centers and to protect detained immigrants in its care, including a detained individual's health and well-being while on a hunger strike. It is not in the detained individual's interest, nor the public interest, to prevent ICE from making medical decisions under its existing standard for individuals in ICE care. This includes ICE's ability to transfer detainees for the sake of sufficient medical care. Because Plaintiffs request a mandatory TRO that would interfere with ICE's existing policies and procedures, their motion should be denied.

        **2. Plaintiffs' Motion for a TRO Seeks Injunctive Relief that is Overly Broad.**

Plaintiffs' request for a class-wide TRO prohibiting ICE from retaliating against free speech is too broad to warrant relief, and this Court cannot issue relief as to individuals who are

not before the Court. Pls.' Mot. for TRO, ECF No. 31 at 2 (seeking a class-wide TRO that prohibits "engaging in any further retaliation for Plaintiffs' exercise of free speech"). A TRO prohibiting ICE from engaging in retaliation against free speech is equivalent to an unenforceable "obey the law" injunction. *Cuviello v. City of Oakland*, 2009 U.S. Dist. LEXIS 26067 (N.D. Cal. Mar. 19, 2009). Instead, an injunction "must 'be specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *Id.* (quoting *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240–41 (2d Cir. 2001); *see also* Fed. R. Civ. P. 65(d)(1) (requiring that an injunction order "describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required."). To the extent Plaintiffs request that the Court issue a TRO that would simply enjoin allegedly unlawful behavior without allowing time for a complete presentation of the facts and determination of the appropriate scope of any injunction, Plaintiffs' request is overbroad and should be denied.

Additionally, Plaintiffs have not moved for class certification. Absent class certification, any preliminary injunctive relief should be directed only to the named Plaintiffs. Federal Rule of Civil Procedure 23(c) provides that, "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). "It is the actual certification of the action as a class action under 23(c) and (a) which alone gives birth to 'the class as a jurisprudential entity,' changes the action from a mere individual suit with class allegations into a true class action qualifying under 23(a), and provides that sharp line of demarcation between an individual action seeking to become a class action and an actual class action." *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1304 (4th Cir. 1978) (citation omitted). Merely treating a case as a class action, but failing to certify the action as a class action as provided by Rule 23, is insufficient. "Without such certification and identification of the class, the action is not properly a class action." *Baxter v. Palmigiano*, 425 U.S. 308, 310 n.1 (1976).

For these reasons, courts have rightly rejected claims for class-wide preliminary injunctive relief before determining the class was certified. The Ninth Circuit has repeatedly held that "in the absence of class certification, [a] preliminary injunction may properly cover only the named plaintiffs." *Nat'l Ctr. for Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1371–72 (9th Cir. 1984) (order granting preliminary injunction was too broad; on remand, "if the district court fails to certify a class of plaintiffs, it must limit the injunction to apply to the named plaintiffs only"); *see also Zepeda v. INS*, 753 F.2d 719, 727–30 & n.1 (9th Cir. 1983) (holding that, in the absence of class certification, preliminary injunctive relief may cover only the named plaintiffs); *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501–02 (9th Cir. 1996) (recognizing that "injunctive relief generally should be limited to apply only to named Plaintiffs where there is no class certification"; *Meyer v. Portfolio Recovery Assocs., LLC*, No. 11-cv-1008, 2011 WL 11712610, *2 (S.D. Cal. Sept. 14, 2011) (concluding that court could not grant class-wide relief prior to deciding whether to certify the class). "This limitation is consistent with the traditional rule that injunctive relief should be narrowly tailored to remedy the specific harms shown by plaintiffs, 'rather than to enjoin all possible breaches of the law.'" *Zepeda*, 753 F.2d at 728 n.1 (citation omitted); *see also Korab v. McManaman*, 805 F. Supp. 2d 1027, 1039–40 (D. Haw. 2011) (broad injunction inappropriate without class certification where court lacks "any idea as the true scope of the relief requested").

Named Plaintiffs purport to represent a class presenting interests far broader than their own. The putative class includes "all individuals detained by ICE at the Mesa Verde and Golden State Annex facilities who have declared, or will declare, that they are on hunger strike." Am. Compl. at 27. Such an unwieldy class includes interests that are speculative and untethered to those of the named Plaintiffs. Absent a recognized exception, "litigation [should be] conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). Injunctive relief entered in an individual case "should [thus] be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Id*. at 702; *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010) (invalidating nationwide injunction where less burdensome remedy was available to redress parties' harm). "This rule applies with special force where there is no class certification." *Los Angeles Haven Hospice v. Sebelius*, 638 F.3d at 664. Accordingly, even if the Court determines that a TRO is proper, any relief must be narrowly tailored and limited to the Plaintiffs who are before this Court in this litigation.

### B. *Aleman Gonzalez* Prevents this Court from Ordering a Class-Wide TRO Preventing the Transfer of Individuals in ICE Detention.

The Court cannot grant Plaintiffs the class-wide relief they seek because it is prevented from doing so by 8 U.S.C. § 1252(f)(1). *See Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2064 (2022). The INA and the Supreme Court's decision in *Aleman Gonzalez* make clear that this Court lacks jurisdiction to grant class-wide injunctive relief that interferes with ICE's execution of its detention responsibilities under the INA, including the ability to transfer detainees and choose where they are detained. *See* 8 U.S.C. § 1252(f)(1); *Aleman Gonzalez*, 142 S. Ct. at 2060. Eight U.S.C. § 1252(f)(1) states that**:**

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

In *Aleman Gonzalez*, the Supreme Court found that this statute "strips lower courts of 'jurisdiction or authority' to 'enjoin or restrain the operation of' the relevant statutory provisions." *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2060 (2022). The relevant statutory provisions are those that charge the Federal Government with the implementation and enforcement of the immigration laws governing the inspection, apprehension, examination, and removal of aliens, *see id*. (discussing 8 U.S.C. §§ 1221–31), and include 8 U.S.C. § 1231(g)(1), which provides that the Secretary of Homeland Security "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."

Here, Plaintiffs' prayer for relief in their Motion for Temporary Restraining Order seeks, amongst other relief, to enjoin Defendants from "Transferring or threatening to transfer or authorizing or directing the transfer of Plaintiffs to different detention facilities in retaliation for their participation in the hunger strike." ECF No. 31-13 at 3. This request specifically seeks to

enjoin ICE's authority under 8 U.S.C. § 1231 to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." To the extent Plaintiffs purport to ask for such relief on a class-wide basis and for individuals other than those named in the Amended Complaint such request is explicitly barred by *Aleman Gonzalez*. Because the Court lacks jurisdiction to enter a class-wide preliminary injunction preventing the transfer of immigration detainees, the Court should deny this portion of Plaintiffs' motion for a TRO.

## V.  CONCLUSION

The Court should deny Plaintiffs motion for a TRO because the Court lacks jurisdiction to grant Plaintiffs the relief they seek and should set this case for briefing on a standard timeline that allows the Parties to fully investigate and respond to the allegations in this case.

Dated: March 13, 2023

Respectfully submitted,
BRIAN BOYNTON
Principal Deputy Assistant Attorney General
U.S. Department of Justice, Civil Division

WILLIAM C. PEACHEY
Director

ELIANIS PEREZ
Assistant Director

SARAH B. FABIAN
Senior Litigation Counsel

ANNA L. DICHTER
JAMES C. GRAULICH
Trial Attorneys

/s/ *Michelle M. Ramus*
MICHELLE M. RAMUS
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation – DCS
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel:    (202) 532-4525
Fax:    (202) 305-7000
Email:  Michelle.M.Ramus@usdoj.gov

*Counsel for Defendants*