# EXHIBIT A

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
ENFORCEMENT AND REMOVAL OPERATIONS
ICE HEALTH SERVICE CORPS**

**HUNGER STRIKE**

**IHSC Directive: 03-24
ERO Directive Number:11758
Federal Enterprise Architecture Number: 306-112-002b
Effective Date: November 27, 2020
Technical Update: April 12, 2022**

**By Order of the Assistant Director
Stewart D. Smith, DHSc, FACHE**

STEWART D SMITH  Digitally signed by STEWART D SMITH
Date: 2020.11.30 08:55:30 -05'00'

1. **PURPOSE**: The purpose of this directive is to set forth policies and procedures for the identification, care, and management of detainees who are determined to conduct a hunger strike.

2. **APPLICABILITY**: This directive applies to all U.S. Immigration and Customs Enforcement (ICE) Health Service Corps (IHSC) personnel, including but not limited to, U.S. Public Health Service (PHS) officers, civil service employees, and contract personnel. It is applicable to IHSC personnel supporting health care operations in ICE-owned and contracted detention facilities (CDF), and to IHSC Headquarters (HQ) staff. This directive applies to contract personnel when supporting IHSC in detention facilities and at HQ. Federal contractors are responsible for the management and discipline of its employees supporting IHSC.

3. **AUTHORITIES AND REFERENCES**:

    **3-1.** Title 8, Code of Federal Regulations, section 235.3 (8 C.F.R. § 235.3), Inadmissible Aliens and Expedited Removal.

    **3-2.** 3-2. Section 232 of the Immigration and Nationality Act (8 U.S.C. § 1222), Detention of aliens for physical and mental examination.

    **3-3.** 3-3. Title 8, Code of Federal Regulations, section 232 (8 C.F.R. § 232), Detention of Aliens for Physical and Mental Examination.

    **3-4.** 3-4. Section 322 of the Public Health Service Act (42 U.S.C. § 249(a)), Medical Care and Treatment of Quarantined and Detained Persons.

- **3-5.** 3-5. Title 42, U.S. Code, Public Health Service Act, Section 252 (42 U.S.C. § 252); Medical Examination of Aliens.
- **3-6.** Federal Bureau of Prisons. (2013). Clinical Guidance. [Medical Management of Inmates on Hunger Strike](#).
- **3-7.** Federal Bureau of Prisons. (2014). Clinical Guidance. [Medical Management of Malnutrition (Undernutrition).](#)
- **3-8.** [IHSC Position Paper| Malnourished Patient on Hunger Strike](#)

4. **POLICY:** IHSC considers a detainee who has not eaten food for nine consecutive meals up to 72 hours to be on a hunger strike. Food is any substance consumed to provide nutritional support for the body to sustain life and vital functions. IHSC is responsible for the medical and mental health evaluation, monitoring and treatment of detainees on hunger strike.

   **4-1.** Ethics: ICE and IHSC respect the First Amendment rights of detainees in ICE custody to engage in a hunger strike as a form of self-expression. ICE detainees have the right to choose how they express themselves. Detainees also have the right to receive care in a compassionate and humane manner, and the right to refuse medical care and treatment. While IHSC supports the detainee's right to express themselves and refuse medical care and treatment, the government's interest in preventing the death of an individual in its custody is paramount. IHSC pursues involuntary treatment for a patient on hunger strike when there is imminent danger of irreparable harm or death, and by providing treatment until the patient is safely out of harm's way. The provision of treatment thereafter is within the right of patient choice. Staff may initiate emergent involuntary treatment actions as required, to prevent harm to the detainee.

   **4-2.** Detainee refusal to consume fluids: A detainee may refuse to consume any fluids for an extended period, resulting in dehydration. The effects of dehydration may lead to a rapid clinical deterioration of the patient despite not being malnourished from the hunger strike.

5. **RESPONSIBILITIES**:
   **5-1.   All Health Staff:**

   5-1.1   Must consider a detainee on a hunger strike when, based on observation, the individual has not eaten for nine consecutive meals or up to 72 hours.

   5-1.2   Must notify the clinical director (CD) and the health services administrator (HSA) by telephone or in-person when a detainee expresses their intent to engage in a hunger strike,

or when a health care provider initiates hunger strike monitoring.

5-1.3 Document all treatment efforts and each treatment refusal in the detainee's medical record.

5-1.4 Must offer counseling regarding medical risks and should encourage detainees to end the hunger strike and accept medical treatment.

5-1.5 Must provide communication assistance to detainees with cognitive disabilities, visual impairments, hearing impairments, and/or limited English proficiency (LEP).

**5-2. Clinical Directors (CD):**

5-2.1 Supervise the clinical management of detainees on hunger strike.

5-2.2 Should recommend transfer to a hospital or a detention facility appropriately equipped for treatment, if medically necessary.

5-2.3 May modify or augment standard treatment protocols when medically indicated.

5-2.4 Must supervise the hunger strike care provided to include review and co-signature of the advanced practice provider's and/or clinical pharmacist's progress notes within 72 hours.

5-2.5 Must determine when involuntary monitoring and/or treatment is necessary and facilitate court declarations if involuntary monitoring and/or treatment become necessary.

5-2.6 Must provide clinical oversight of involuntary treatment and/or monitoring.

5-2.7 May utilize the IHSC Ethics Committee, IHSC Clinical Review Subcommittee for consultation and/or second opinion. Must refer hunger strike cases to the Ethics Committee, IHSC Clinical Review Subcommittee prior to involuntary treatment.

**5-3. Physicians:**

5-3.1 Perform the CD responsibilities when required.

5-3.2 May terminate hunger strike monitoring; only physicians can issue this order.

5-3.3 Provide clinical assessment and recommend treatment, intervention, and follow-up.

**5-4. Advanced Practice Providers (APP):**

5-4.1 Provide clinical assessment, and recommend treatment, intervention, and follow-up.

5-4.2   Should refer the detainee to a hospital, when clinically indicated.

5-4.3   Consult with the CD or physician for hunger strike care; route all progress notes to the CD or physician for review and co-signature.

5-4.4   Evaluate the detainee's medical status and comorbid conditions to anticipate potential complications from not eating (e.g., insulin-using detainee with diabetes refusing meals).

5-4.5   Order and interpret appropriate clinical monitoring and optimize pharmacologic treatment.

5-4.6   Document the CD or physician decision and order to discontinue hunger strike monitoring in the medical record; the physician must co-sign the documentation.

**5-5.   Health Services Administrators (HSA):**

5-5.1   Must notify the respective ICE/ERO field office director or designee in writing:

5-5.1.a   When a detainee expresses their intent to engage in a hunger strike or begins a hunger strike.

5-5.1.b   If a detainee refuses treatment while on hunger strike.

5-5.1.c   Of any proposed plan to involuntarily treat the detainee.

5-5.1.d   Of any emergency treatment provided to the detainee.

5-5.2   Must ensure health staff receive training on hunger strike during their initial employment orientation, and annually, to ensure their understanding of the medical care requirements for a detainee on hunger strike.

**5-6.   Clinical Pharmacists (CP):**

5-6.1   Provide clinical assessment and recommend treatment, intervention, and follow-up.

5-6.2   Refer the detainee to a hospital, when clinically indicated.

5-6.3   Consult with the CD or physician for hunger strike care; route all progress notes to the CD or physician for review and co-signature.

5-6.4   Evaluate detainee's medical status and comorbid conditions to anticipate potential complications from not eating (e.g., insulin-using detainee with diabetes refusing meals).

5-6.5   Order and interpret appropriate clinical monitoring and optimize pharmacologic treatment.

5-6.6   May document the CD or physician's decision and order to discontinue hunger strike monitoring in the medical record; the

physician must co-sign the documentation.

**5-7.   Registered Nurses (RN):**

5-7.1   Monitor daily encounters using the eCW Hunger Strike Nursing Evaluation Template, or the IHSC 839 paper form, in the event of an electronic health record outage.

5-7.2   Must notify the on-call medical provider to recommend referral to a hospital, when clinically indicated.

**5-8.   Licensed Practical Nurses:**

5-8.1   Complete clinical tasks associated with hunger strike monitoring as directed by the RN.

**5-9.   Medical Assistants:**

5-9.1   Complete clinical tasks as directed by licensed health staff.

**5-10.  Behavioral Health Providers (BHP):**

5-10.1  Conduct a mental health evaluation of the detainee. Repeat evaluation and provide treatment as necessary. Provide behavioral health monitoring and follow-up as necessary.

5-10.2  Must evaluate the detainee for possible behavioral health causes of the hunger strike and provide supportive counseling that may help to end the hunger strike. If there is no BHP on-site or available through telemedicine, a medical provider must refer the detainee to an off-site BHP capable of performing the mental health evaluation.

**5-11.  Behavioral Health Technicians:**

5-11.1  Must complete clinical tasks associated with hunger strike monitoring as directed by the BHP.

**5-12.  IHSC Ethics Committee, IHSC Clinical Review Subcommittee:**

5-12.1  Reviews and provides treatment recommendations to the treating physician.

5-12.2  Provides case consultation for the use of involuntary treatment based on medical records, clinical findings and other information resulting in a formal recommendation.

**6.  PROCEDURES:**

**6-1.   Initial Referral:**

6-1.1   IHSC staff must consider a detainee on a hunger strike, when based on observation, the individual has not eaten for nine consecutive meals or up to 72 hours. Staff must refer the detainee to the health

staff for evaluation. Prior to nine consecutive missed meals or up to 72 hours, staff may refer a detainee to health staff for medical evaluation, if indicated.

6-1.2  Health care providers must evaluate the detainee and assess whether the detainee's action is reasoned and deliberate, or the manifestation of a mental illness.

6-1.3  If a detainee who engages in a hunger strike is incapable of giving informed consent due to a mental health condition, cognitive decline, or illness, the medical and/or behavioral health provider must notify the HSA who notifies the facility assistant field office director or designee for awareness and potential administrative action. The medical and/or behavioral health provider may further refer the detainee to a facility capable of addressing their medical needs.

**6-2. Medical Evaluation and Management:**

6-2.1  IHSC staff must carefully monitor and document the detainee's health status while on hunger strike. Monitoring includes documentation of food and liquid intake on the IHSC Hunger Strike Monitoring Form (IHSC 839) or the template in the electronic health record.

6-2.2  The medical provider or the RN must assess the detainee as early as possible; within 4 hours once notified, that the detainee expressed their intention to engage in a hunger strike; or when the detainee has not consumed food for nine consecutive meals or up to 72 hours.

6-2.3  If the RN conducts the initial assessment, the RN must contact an on-call medical provider for hunger strike monitoring orders.

6-2.4  The medical provider must provide orders for hunger strike monitoring and document the orders in the health record. Medical providers may give verbal or telephone orders to initiate monitoring as appropriate.

6-2.5  The initial evaluation of a detainee on hunger strike must include a measure of vital signs, height, weight, urinalysis, and a psychological or psychiatric evaluation.

6-2.6  Staff must refer the detainee on hunger strike to a medical provider for evaluation as early as possible, as clinically indicated, or as determined by the clinical director.

6-2.6.a  The medical provider must examine the detainee's general

     physical condition and proceed with diagnostic studies if indicated. The medical provider evaluation should include a review of the detainee's medical history, comorbid conditions, assessment of hydration, cognitive status, and ambulatory status. The medical provider must document the risks of the hunger strike and must provide the patient relevant education about risks for short and long-term health consequences of malnutrition and/or dehydration.

  6-2.6.b The medical provider should order clinically indicated laboratory tests and vital signs (e.g., complete metabolic panel, prealbumin, complete blood count, magnesium, phosphorus, thiamine, and other labs as deemed appropriate) as needed.

6-2.7 The medical provider must refer the detainee on hunger strike to a BHP for evaluation as early as possible, as clinically indicated, or within 72 hours of the referral.

6-2.8 The medical provider must utilize the IHSC Ethics Committee, IHSC Clinical Review Subcommittee, for timely case review and treatment recommendations prior to any involuntary treatment.

6-2.8 IHSC staff should use the Bureau of Prisons <u>Clinical Practice Guidelines for the Medical Management of Malnutrition (Undernutrition)</u> and the <u>Medical Management of Inmates on Hunger Strike</u> to direct care.

6-2.9 **Frequency of Evaluation:**

  6-2.9.a Health staff must measure and record vital signs and weight at least once every 24 hours during the hunger strike, and repeat other procedures as medically indicated.

  6-2.9.b The medical provider must evaluate and monitor a detainee on hunger strike at a minimum daily, as clinically indicated, or as determined by the clinical director.

  6-2.9.c The CD or physician must review and co-sign the medical provider evaluation and treatment plan, and provide additional recommendations as clinically indicated. The CD or physician must be available by phone for consultation as required. The expected time frame for co-signature of hunger strike care is within 72 hours.

  6-2.9.d The BHP must evaluate and provide supportive treatment as clinically indicated, or as determined by the CD.

        6-2.9.e    Nursing staff evaluate detainees on hunger strike and report any concerns to the on-call provider (see documentation required in section 6-8.3).

6-3. **Nutrition and Hydration:**

    6-3.1    Documentation

        6-3.1.a    The medical provider may require record of intake (oral, nasogastric, and intravenous) and output. Health staff should record this information on the Hunger Strike Monitoring Form (IHSC 839), or equivalent.

        6-3.1.b    Nursing staff should record all intake and output, per the eCW Documenting Input and Output Within Procedures (see eCW Guides) and provider orders.

    6-3.2    Unless otherwise directed by the CD, custody staff must deliver three meals per day to the detainee's room, regardless of the detainee's response to the offered meal. Nursing staff must document offered meals in the progress notes of the electronic health record.

    6-3.3    Staff must provide an adequate supply of drinking water or other beverages to the detainee's room.

    6-3.4    During hunger strike, the detainee may not purchase or possess commissary or vending machine food or beverages.

    6-3.5    Staff must remove all food items not authorized by the CD from the detainee's room.

    6-3.6    Some detainees may choose to continue hydration while refusing all food, while others may choose to refuse both hydration and food. Detainees who refuse hydration require added attention and monitoring and may require referral for involuntary treatment earlier than detainees who continue to hydrate.

**6-4. Housing:**

    6-4.1    When medically advisable, the medical provider must place a detainee on hunger strike in a housing location that allows for close supervision, observation, and monitoring. The Medical Housing Unit (MHU) is recommended if available. Alternatively, staff may house detainees on hunger strike in a Special Management Unit (SMU) or segregation.

    6-4.2    If housed in the SMU or segregation, staff must document the reason for this in the detainee's medical record. Additionally, the

    medical provider must review the patient's housing status as clinically indicated or at least every 72 hours.

6-4.3 Staff must remove a detainee with a medical or mental health condition on a hunger strike from the SMU or segregation, if health staff determine that the SMU/segregation placement resulted in deterioration of the detainee's medical or mental health, and an appropriate alternative is available.

6-4.4 Mass hunger strike housing. In the event of unusually high numbers of patients on hunger strike, the CD should work with the facility director or designee to establish housing arrangements where medical staff can provide monitoring and treatment.

**6-5. Refusal of Treatment:**

6-5.1 ICE detainees have the right to refuse medical treatment. Any medical procedures or treatment performed for a detainee on hunger strike may only be done with the detainee consent, in response to a health emergency, or pursuant to a court order.

6-5.2 Medical staff must monitor any detainee who refuses medical treatment, to evaluate whether the hunger strike poses a risk to the detainee's life or permanent health.

6-5.3 If the detainee refuses evaluation, treatment, or other medical procedures, health staff must request that the detainee sign the IHSC Refusal of Treatment Form (IHSC 820) for each encounter refused by the detainee. If the detainee chooses not to sign the refusal form, health staff must document the refusal on the form. Another staff member must witness the refusal by signing the form.

6-5.4 The physician may recommend involuntary treatment when clinical assessment and laboratory results indicate the detainee's weakening condition threatens the life or long-term health of the detainee.

**6-6. Involuntary Treatment:**

6-6.1 Under no circumstances may a facility administer involuntary medical treatment without authorization from ICE/ERO. Per PBNDS 4.2 Hunger Strike, ICE must seek a court order to obtain authorization to permit involuntary medical treatment.

6-6.2 Health care providers may only administer involuntary treatment within medical, psychiatric, and legal safeguards, and in accordance with this directive and applicable laws after the physician determined that the detainee's life or health is at risk.

6-6.3   If the CD or physician believes the detainee's condition may progress to a status that would require involuntary feeding or hydration, the CD or HSA must contact the local ICE Office of Chief Counsel as early as possible to discuss the hunger strike.

6-6.4   The CD, or HSA, must notify the facility director or designee and the ERO field office in writing of any plans for involuntary treatment.

6-6.5   Health staff must make reasonable efforts to educate and encourage the detainee to accept treatment voluntarily, before administering involuntary treatment.

6-6.6   Health services staff should refer to IHSC Directive 02-07 Consent for Treatment for additional guidance regarding involuntary treatment.

6-6.7   Involuntary treatment may include involuntary feeding, fluid repletion, and/or medical interventions (e.g., physical examination, evaluation of hydration status, vital signs monitoring, daily weight, laboratory tests, application of physical restraints, and other medical procedures deemed necessary).

**6-7. Hunger Strike Discontinuation:**

6-7.1   IHSC health staff must continue clinical and laboratory monitoring until the detainee's life or health is out of danger and continue medical and mental health follow up as necessary.

6-7.2   Only physicians may order the termination of hunger strike monitoring.

6-7.2.a   If a physician is not on-site, the APP must consult with the physician by telephone and document the physician order in the medical record. The APP must document the physician consultation and route the documentation to the CD or physician for co-signature.

6-7.3   The CD, or physician, must use clinical judgment regarding an individual detainee when considering the amount of weight lost and any co-morbid conditions that may complicate the detainee's health status.

6-7.3.a   Generally, hunger strike monitoring should continue until the detainee is consuming sufficient calories to meet their bodily requirements (i.e., resumes consuming the regularly issued facility meals).

6-7.3.b   The physician may discontinue hunger strike monitoring

>   when a detainee willingly and consistently consumes sufficient quantities of alternate sources of nutrition (e.g., liquid meal replacement products). This situation qualifies as a "food protest" and does not require daily reporting or Hunger Strike Tracker updates.
>
>   Another common situation involves the detainee consuming a combination of facility food and alternate sources of nutrition. If the detainee voluntarily consumes sufficient calories, a hunger strike is no longer taking place. The physician can discontinue the hunger strike status.
>
> 6-7.3.c   There is no specific set caloric intake requirement to quantify the end of a hunger strike. It is not uncommon for detainees on hunger strike to consume minor amounts of food (e.g., a piece of bread, a carton of milk or juice, a cookie). Such episodes of minor food or caloric consumption should not qualify as justification to end a hunger strike.
>
> 6-7.3.d   Continued monitoring may be clinically appropriate for a detainee who is no longer on hunger strike. Reporting to local field operations staff and IHSC HQ is not required.

**6-8. Documentation:**

>   6-8.1   Health staff must record interactions with the detainee, provision of food, and attempted and successfully administered medical treatment.
>
>   6-8.2   Medical providers may use the EHR "Hunger Strike Medical Evaluation" template to document the hunger strike encounters, to order health assessments, required laboratory monitoring, and vital signs for detainees on hunger strike.
>
>   6-8.3   Nursing staff document their daily encounters using the eCW Hunger Strike Nursing Evaluation Template or the IHSC 839 paper form in the event of electronic health record outage.
>
>   6-8.4   Health care providers document refusal of care on the IHSC Refusal of Treatment Form, and health services staff scan the form into the electronic health record.
>
>   6-8.5   Health staff must document all encounters with the detainee on hunger strike in the health record.
>
>   6-8.6   The CD must review hunger strike monitoring and treatment plans, and document clinical oversight in the medical record.

**6-9.** **Reporting Requirements**: IHSC-staffed detention facilities must report hunger strikes as follows:

6-9.1 IHSC health staff must immediately notify the facility health services administrator (HSA) and CD when a detainee states their intent to initiate a hunger strike; or based on observation, has not eaten for nine consecutive meals or up to 72 hours.

6-9.2 The HSA, or CD, must immediately notify the ICE/ERO facility director or designee when a detainee states their intent to initiate a hunger strike; or based on observation, has not eaten for nine consecutive meals or up to 72 hours.

6-9.3 The HSA must notify IHSC leadership per IHSC Directive 01-25, *Significant Event Notification*, reporting requirements.

6-9.4 The HSA or designee must add the detainee to the IHSC SharePoint [Hunger Strike Tracker](). The HSA, or designee, must provide daily updates on regular business days until the physician removes the detainee from hunger strike monitoring.

6-9.5 Daily Reporting: Nursing staff must complete and send a daily report by email to the CD, HSA, and nurse manager (NM). Components of the daily report must include:

6-9.5.a Problem list/medical history;

6-9.5.b Number of days on hunger strike (number of days on hunger strike includes all meals missed since meal refusal began);

6-9.5.c Vital signs;

6-9.5.d Weight and body mass index (BMI) at hunger strike initiation;

6-9.5.e Current weight, BMI;

6-9.5.f Total weight loss and calculation of percentage weight lost from baseline;

6-9.5.g Total intake (oral, nasogastric, and intravenous); and

6-9.5.h Total output.

6-9.6 IHSC health staff must report incidents involving involuntary medical intervention required during the hunger strike, such as involuntary feeding or hydration, to the IHSC Medical Quality Management Unit. Staff must submit the report via SharePoint within 72 hours.

6-9.7 IHSC staff must report hunger strike discontinuations to the IHSC HSA. The HSA must route this communication to the assistant field

     office director or designee.

  6-9.8 **Hunger Strikes in non-IHSC Staffed Detention Facilities:** IHSC field medical coordinators (FMCs) monitor and track detainees who engage in a hunger strike in non-IHSC detention facilities. The FMC must add the detainee to the IHSC SharePoint [Hunger Strike Tracker](#) and provide daily updates on regular business days, until the physician removes the detainee from hunger strike monitoring.

**6-10.** The facility director or designee informs the assistant field office director or designee of any detainees engaging in a hunger strike.

**6-11. STAFF TRAINING:** The health care provider discipline specific lead will ensure their clinical staff receive training on hunger strike management during initial new hire orientation and annually thereafter. The training must prepare IHSC staff to recognize the signs of a hunger strike, and implement procedures for referral, medical assessment, and medical management of a detainee on a hunger strike.

7. **HISTORICAL NOTES**: This directive supersedes IHSC Directive 03-24, *Hunger Strike* dated November 27, 2020.

 **7-1. SUMMARY OF CHANGES.** The updated directive specifies a hunger strike as a detainee deliberately missing either up to nine meals or no oral intake within a 72-hour span.

8. **DEFINITIONS:** See definitions for this policy in the IHSC Glossary in the [IHSC Policy Library.](#)

9. **APPLICABLE STANDARDS**:

 **9-1. American Correctional Association (ACA):** *Performance-Based Standards for Health Care In Adult Local Detention Facilities*. 4th Edition.

  9-1.1. 4-ALDF-1C-05;

  9-1.2. 4-ALDF-1C-12;

  9-1.3. 4-ALDF-1C-13 (in emergency).

 **9-2. Performance-Based National Detention Standards (PBNDS):** PBNDS 2011, 2016 revision.

  9-2.1. Part 4: Care, Section 4.2: *Hunger Strikes*.

 **9-3. Family Residential Standards (FRS):**

  9-3.1. Part 4: Care, Section 4.2: *Hunger Strikes*.

10. **RECORDKEEPING:** IHSC creates, receives, stores, retrieves, accesses, retains, and disposes of these records in accordance with DHS/ICE-013 Alien Medical Records System of Records and National Archives and Records Administration approved records retention schedules. Contact the IHSC Records Liaison for further

information or guidance. Health records are retained according to the National Archives and Records Administration Records Schedule DAA-2015-0567-0002, Electronic Health Record (eHR) System. The Hunger Strike Tracker is stored in SharePoint, which is maintained for seven years; however, there is no current retention schedule for this information, and therefore must be maintained until a retention schedule is developed and approved by ICE Records and National Archives and Records Administration. SEN notifications should be maintained per ICE retention schedule.

**Protection of Detainee Health Records and Sensitive Personally Identifiable Information (PII)**

**10-1.** ICE uses detainee health records and information maintained in the DHS/ICE-013 Alien Medical Records System of Records to provide for the care and safety of detainees. IHSC will limit access to detainee health records and information to those individuals who need to know the information for the performance of their official duties, and who have appropriate clearances or permissions. IHSC will always secure paper records in a locked cabinet or room when not under the direct control of an officer or employee with a need for the paper record to perform their duties.

**10-2.** IHSC staff are trained at orientation and annually on the protection of patient health information and sensitive PII.

**10-3.** IHSC staff reference the Department of Homeland Security Handbook for Safeguarding Sensitive PII (Handbook) at DHS Handbook for Safeguarding Sensitive PII for additional information concerning safeguarding sensitive PII.

**11. NO PRIVATE RIGHT STATEMENT:** This directive is an internal directive statement of IHSC. It is not intended to, and does not create any rights, privileges, or benefits, substantive or procedural, enforceable against the United States; its departments, agencies, or other entities; its officers or employees; or any other person.

**12. POINT OF CONTACT:** Chief, Medical Services Unit.