# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

Mendez, *et al*.

          Plaintiffs,

  v.

U.S. Immigration and Customs Enforcement, *et al*.

          Defendants

Case No. 03:23-cv-00829-LB

### DECLARATION OF DR. JAMAL K. GWATHNEY

I, Jamal K. Gwathney, make the following statements under oath and subject to the penalty of perjury pursuant to the provision of 28 U.S.C. § 1746.

1. I am a licensed, Board-Certified Family Medicine physician employed by U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), ICE Health Service Corps (IHSC). I currently serve as IHSC Deputy Medical Director (DMD) assigned to IHSC Headquarters and stationed in San Diego, California. I have held this position since December 1, 2021.

2. ICE is committed to ensuring that every person detained in its custody receives timely access to necessary and appropriate medical, dental, and mental health care and treatment while in custody. The health, safety, and welfare of those detained in its custody are among ICE's highest priorities.

3. As the DMD, I supervise three regional clinical directors (RCD), the chief advanced practice provider, the chief dentist, the chief psychiatrist, and the chief pharmacist. I also oversee credentialing and privileging of all licensed independent providers practicing at IHSC-staffed facilities and serve as the chair of the Medical Executive Committee. As the IHSC DMD, I provide

clinical subject matter expertise and support to ICE leadership. My duties also include serving as the unit chief for the Medical Services Unit (MSU). The MSU ensures the provision of medical, dental, psychiatry, and pharmacy services to non-citizens in ICE custody. The components of the MSU collaborate to address medical care mission needs.

4. This declaration is made in support of the Government's response to a Temporary Restraining Order filed in the above-reference case.

5. Transfer of individuals on a hunger strike is governed by IHSC Directive: 03-24, Hunger Strike, § 5-2.2 (Nov. 27, 2020; Tech. Update Apr. 12, 2022); IHSC Directive: 01-38, Appropriate Housing Placements for Complex Patients, Appendix B, Level 1-4 facility criteria (Feb. 2, 2022; Tech. Update: May 11, 2022); and ICE Policy 11022.1, Detainee Transfers (Jan. 4, 2012).

6. At any time, a patient or group of patients may be referred to an IHSC-staffed facility or an outside medical facility if there is currently, or the potential for, clinical progression of a severe medical condition resulting from a hunger strike, requiring medical services outside the scope of the originating facility, or if IHSC determines an independent medical opinion is warranted. If the hunger strike leads to a weakened condition that threatens the patient's life or long-term health, a physician, such as the Clinical Director, will collaborate with the RCD, and will decide, based on their clinical judgment, whether to recommend transfer of the patient to a facility that can provide a higher level of care. The RCD will then coordinate within their region or with other RCDs to find a facility that meets the patient's needs.

7. These transfer decisions are based on several factors including, but not limited to, anticipating both short-term and long-term needs in the management of the hunger strike patient or group. The short-term needs may include the availability of a medical housing unit (MHU) that

provides space for private rooms for observation, adequate access to area hospitals, availability of a physician (or multiple physicians and other medical staff) to oversee the care. The long-term needs may include the facility staff's knowledge and/or experience in addressing re-feeding syndrome once a hunger strike has ended. Based on those needs, the clinical rationale may vary based on the originating facility's ability to manage the patient or group. Clinically, it is prudent to transfer a patient to a facility capable of providing a higher level of care before the patient reaches more critical stages that could compromise clinical stability and travel clearance.

8. The higher level of care includes providing diagnostic, interventional, or access to hospital care beyond the capacity of the facility from which a patient originates.

9. If, after a careful review of medical documents and in consideration of the ongoing effects of the hunger strike, medical personnel concludes that an individual or group needs a higher level of care, a request will be made to transfer a patient or patients to a facility with the appropriate clinical resources.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this March 13th 2023 at San Diego, California

**JAMAL K GWATHNEY**
Digitally signed by JAMAL K GWATHNEY
Date: 2023.03.13 17:20:50 -07'00'

Jamal K. Gwathney, MD, MPH, FAAFP
Deputy Medical Director
ICE Health Services Corps
U.S. Immigration and Customs Enforcement