UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILTON MENDEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., <br><br> Defendants. | Case No. 23-cv-00829-TLT <br><br> **ORDER DENYING SECOND EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER** <br><br> Re: ECF No. 31 |

Before the Court is Plaintiffs Milton Mendez, Guillermo Medina Reyes, Cruz Leandro Martinez Leiva, R.H.M., E.O.A.R., Pedro Figueroa-Padilla, Jose Ruben Hernandez, Raymundo Noe Dominguez Vidal, and Roberto Carlos Franco Guardado's (collectively, "Plaintiffs") second ex parte motion for a temporary restraining order ("TRO").  *See* Pls. ['] Second Mot. for TRO ("Mot."), ECF No. 31.  On March 14, 2023, the Court held a hearing on Plaintiffs' motion.

Having carefully considered the parties' briefing, the relevant legal authority, the parties' oral arguments, and for the reasons below, the Court **DENIES** Plaintiffs' second ex parte motion.

I.    **BACKGROUND**

   A.    **Factual Background**

Plaintiffs bring this action for declaratory and injunctive relief against Defendants U.S. Immigration and Customs Enforcement ("ICE") and the GEO Group, Inc. ("GEO"), a private, for-profit prison company (collectively, "Defendants"), for alleged violations of Plaintiffs' First Amended rights.  Am. Compl. ¶ 1, ECF No. 30.  Specifically, Plaintiffs allege that Defendants have retaliated against them for exercising their First Amendment rights through a peaceful hunger strike while civilly detained by ICE and GEO.  *Id.*[1]

---

[1] It is unclear whether Plaintiffs are only civil detainees or if they are awaiting removal because of a criminal conviction.  The Court inquired but neglected to obtain clarification on this issue at oral argument.

1    On February 17, 2023, Plaintiffs began their hunger strike to protest "a supposedly 'voluntary' work program, under which ICE and GEO rely on detained individuals to provide cleaning and sanitation services to maintain detention facilities, for only USD $1.00 per day" in violation of California minimum wage laws.  Am. Compl. ¶ 4.  Plaintiffs also protest the conditions at the Mesa Verde and Golden State Annex detention facilities.  *Id.* ¶¶ 4-6, 14-22, 29-49.  "Examples of such conditions include being served expired food at mealtime, inadequate medical care, moldy showers, lack of access to hygienic clothes and footwear, a pattern of retaliation, and other conditions causing or exacerbating illnesses and injuries."  *Id.* ¶ 29.

Plaintiffs allege that since they began their hunger strike, Defendants have retaliated against them.  Am. Compl. ¶ 6.  According to Plaintiffs, Defendants have retaliated against them by denying or restricting Plaintiffs' "access to the law library, family visitation, church, yard time, and recreational activities."  *Id.*  "Defendants have also engaged in a pattern of harassment against Plaintiffs by threatening to place them in solitary confinement, taunting them, pressuring them to abandon their strike, making the temperature of the dorms uncomfortably cold, and depriving Plaintiffs of essential non-food commissary items (such as hygiene products)."  *Id.*

On March 7, 2023, this alleged behavior escalated.  Am. Compl. ¶ 42.  According to Plaintiffs, several ICE and GEO officers "wearing military-style clothing and gear, and also armed with batons and pepper spray," forcibly removed Plaintiffs Raymundo Noe Dominguez Vidal, Roberto Carlos Franco Guardado, Jose Ruben Hernandez Gomez, and Pedro Figueroa-Padilla from their dorm and transferred them to a facility in El Paso, Texas to receive increased medical treatment.  *Id.* ¶¶ 51-53, 57.  Plaintiffs challenge Defendants' explanation for the transfers and allege that they were transferred to an out-of-state facility in retaliation for their participation in the peaceful hunger strike.  *Id.* ¶¶ 1, 7, 19-22.

**B.    Procedural Background**

Plaintiffs filed their original complaint on February 23, 2023.  Compl., ECF No. 1.  On February 28, 2023, Plaintiffs filed a proof of service indicating they had served GEO via U.S. Postal Service certified mail.  ECF No. 10.  On March 7, 2023, Plaintiffs filed their first ex parte motion for a TRO.  ECF No. 22.  In support of Plaintiffs' motion for a TRO, Plaintiffs' counsel

filed a declaration stating that on "March 7, 2023, at 8:59 a.m. Pacific Time, [she] emailed…Susan Coleman… (counsel for [GEO] in other matters) …informing [her] of Plaintiffs' intention to move for a [TRO] if [she] did not provide detailed information and halt transfers of hunger strikers in Mesa Verde or Golden State Annex." *See* Decl. of Michelle (Minju) Y. Cho. ¶ 2, ECF No. 22-9. Plaintiffs' counsel further stated that she "requested a response within two hours" from Ms. Coleman, and she "did not receive a response from…Ms. Coleman during that time frame." *Id.*

In its Order denying Plaintiffs' first motion for an ex parte TRO, the Court explained that the Court's Notice of Electronic Filing indicated Plaintiffs filed their motion at "10:41 PM PST." *See* ECF No. 22. However, Ms. Coleman responded to Plaintiffs' counsels' email on March 7, 2023, at "7:06:11 PM Eastern Standard Time" stating that she "had not been retained [by GEO] on this case to date," and she did not "know if GEO has been properly served at this point but it has not yet appeared in the case." Decl. of Michelle (Minju) Y. Cho., Ex. 2.

The Court found that Plaintiffs knew or should have known Ms. Coleman did not represent GEO in this matter before they filed their first ex parte motion for a TRO. Thus, it was unclear to the Court whether GEO was ever given notice of Plaintiffs' first motion for a TRO, and Plaintiffs had failed to file a written certification from their attorney setting forth the efforts made to give service to GEO and the reasons why it should not be required to do so. Accordingly, the Court denied Plaintiffs' first ex parte motion for a TRO and held that Plaintiffs must serve GEO with their TRO before the Court could consider it, unless the moving party "certifie[d] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

On March 9, 2023, Plaintiffs returned an executed summons indicating they had served GEO via personal service. ECF No. 20. The next day, Plaintiffs filed an amended complaint (ECF No. 30) and a renewed ex parte motion for a TRO. ECF No. 31. The Court special set a TRO hearing for March 14, 2023, at 9:30 a.m. ECF No. 32.[2]

---

[2] Counsel for GEO specially appeared at the March 14, 2023, TRO hearing to observe and attempted to challenge the Court's jurisdiction over GEO. Special appearances are not required to challenge jurisdiction. *See S.E.C. v. Wencke*, 783 F.2d 829, 833 n.3 (9th Cir. 1986); *see also Republic Intern. Corp. v. Amco Engineers, Inc.*, 516 F.2d 161, 165 (9th Cir. 1975) ("Special appearances to challenge jurisdiction are no longer required in federal courts.").

## II. LEGAL STANDARD

To obtain a TRO, Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. NRCD, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).  Because injunctive relief is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). Thus, "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)).  "In exercising their sound discretion, courts…should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

Following *Winter*, courts in the Ninth Circuit have applied a sliding scale test when there is a lesser showing of likelihood of success that amounts to "serious questions on the merits" and the balance of hardships tips strongly in the plaintiff's favor, so long as the plaintiff satisfies the other two prongs under *Winter* by showing that there is a likelihood of irreparable injury, and that the injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). Injunctive relief is appropriate where "a plaintiff demonstrates…that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* (citation omitted). The plaintiff must also satisfy the irreparable harm and public interest requirements under *Winter*. *Id.* at 1132, 1135. The moving party bears the burden of proving the requisite elements. *See Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

## III. DISCUSSION

### 1. Ultimate Relief

As a preliminary matter, Plaintiffs here are seeking to obtain, by means of a TRO, a substantial portion of the ultimate relief they seek in the case. The sole purpose of a TRO is to preserve the status quo pending hearing on the moving party's application for a preliminary injunction. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423,

439 (1974). "Status quo" means the last uncontested status that preceded the pending controversy. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

Here, Plaintiffs are not attempting to preserve the status quo or the relative positions of the parties pending a determination on the merits. Instead, Plaintiffs are seeking an injunction that would alter the status quo by permanently preventing Defendant ICE from

> (1) Transferring or threatening to transfer or authorizing or directing the transfer of Plaintiffs to different detention facilities in retaliation for their participation in the hunger strike; (2) Continuing to detain Individual Plaintiffs Pedro Figueroa-Padilla, Jose Ruben Hernandez, Raymundo Noe Dominguez Vidal, and Roberto Carlos Franco Guardado in a facility other than the Mesa Verde ICE Processing Center, where their transfer out of the Mesa Verde ICE Processing Center was effectuated in retaliation for their participation in the hunger strike; (3) Force-feeding or attempting to force-feed Plaintiffs without at least 24 hours' notice to Plaintiffs' counsel and to this Court; and (4) Otherwise engaging in or authorizing any further retaliation for Plaintiffs' exercise of protected First Amendment activity through their hunger strike; Enjoin all Defendants from: (1) Using violence, excessive physical force, or sexually-abusive pat downs against Plaintiffs; (2) Denying Plaintiffs access to their attorneys; and (3) Otherwise engaging in any further retaliation for Plaintiffs' exercise of protected First Amendment activity through their hunger strike.

*See* Mot. 1. The relief Plaintiffs seek in their TRO is the same relief they seek in their first amended complaint. Thus, the relief Plaintiffs are seeking in their motion for a TRO is not "temporary" or "preliminary" but rather it is the same ultimate relief they seek in their first amended complaint. Compare Mot. 1 and Am. Compl. 27-28. "[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *Univ. of Tex.*, 451 U.S. at 395; *see also Senate of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992) ("[J]udgment on the merits in the guise of preliminary relief is a highly inappropriate result.").[3]

---

[3] At the March 14, 2023, TRO hearing, Defendant ICE confirmed that Plaintiffs Pedro Figueroa-Padilla, Jose Ruben Hernandez, Raymundo Noe Dominguez Vidal, and Roberto Carlos Franco Guardado were currently being transferred back to the Mesa Verde ICE Processing Center, which renders moot Plaintiffs' second request for injunctive relief against Defendant ICE. In addition, Defendant ICE agreed to provide Plaintiffs' counsel and this Court with at least 24-hours' notice of force-feeding or attempting to force-feed

**2. Section 1252(f)(1)**

Defendant ICE argues that a class-wide TRO is "not proper here where Plaintiffs have not filed for class certification." Letter Br. 3, ECF No. 37. Specifically, Defendant ICE argues that under 8 U.S.C. § 1252(f)(1), "this Court lacks jurisdiction to grant class-wide injunctive relief that interferes with ICE's execution of its detention responsibilities under the Immigration and Nationality Act, including the ability to transfer detainees and choose where they are detained." *Id.* 8 U.S.C. § 1252(f)(1) reads as follows:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

The Supreme Court has explained that Section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2065 (2022) (clarifying that district courts may not enjoin the operation of 8 U.S.C. §1225(b) on a class-wide basis). Nevertheless, at the March 14, 2023, TRO hearing, Plaintiffs challenged Defendant ICE's argument on this issue but conceded that Plaintiffs have not filed for class certification. Thus, Plaintiffs conceded that *Garland v. Aleman Gonzalez* did not apply to cases, as here, in which no class has been certified. Accordingly, the Court **DENIES** Plaintiffs' remaining requests for class-wide injunctive relief without prejudice.

**3. Ex Parte TROs Are Granted Under Very Few Circumstances**

As the court previously discussed in its order denying Plaintiffs' first ex parte motion for a TRO (ECF No. 27), there are "very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130-31 (9th Cir. 2006). For example, courts have granted an ex parte TRO "where notice to the adverse party is impossible

---

Plaintiffs, which renders moot Plaintiffs' third request for injunctive relief against Defendant ICE. Accordingly, the Court **DENIES** Plaintiffs' second and third requests for injunctive relief as moot.

either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Id.*  Courts have also recognized "a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Id.*

In its order denying Plaintiffs' first ex parte motion for a TRO, the Court advised Plaintiffs that they could file a motion for a preliminary injunction and proposed a briefing schedule that would have allowed Defendants 14 days to fully brief an opposition/response to Plaintiffs' motion. Instead, given the exigent circumstances, Plaintiffs chose to file a second ex parte motion for a TRO. *See* Mot. 2 ("Plaintiffs acknowledge that the Court's order set a briefing schedule and hearing date for a motion for a preliminary injunction. ECF No. 27 at 4. Respectfully, for the reasons described in the accompanying motion, Plaintiffs seek emergency relief to prevent irreparable harm from occurring prior to the Court's resolution of a preliminary injunction motion."). As a result, Defendants had a very limited opportunity to brief the issues presented in Plaintiffs' motion.

Because injunctive relief is "an extraordinary remedy," Courts may only award such extraordinary relief "upon a clear showing that the plaintiff is entitled to such relief," *Winter*, 555 U.S. at 22, and there "very few circumstances justifying the issuance of an ex parte TRO." *Reno*, 452 F.3d at 1130-31. The Court again finds that Plaintiffs have failed to present persuasive evidence demonstrating that their case falls within the "very few circumstances" justifying the issuance of an ex parte TRO. "The stringent restrictions imposed by…Rule 65 on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted [to] both sides of a dispute." *Granny Goose Foods, Inc.*, 415 U.S. at 439.

**IV.    CONCLUSION**

For the above reasons, the Court hereby **DENIES** Plaintiffs' second an ex parte motion for TRO without prejudice.  Plaintiffs' second and third requests for injunctive relief against Defendant ICE are **DENIED** as moot. In addition, the Court **ORDERS** as follows: (1) Defendant ICE shall provide Plaintiffs' counsel and this Court with at least 24-hours notice of force-feeding

or attempting to force-feed Plaintiffs, (2) Defendants are to submit to the Court the medical records of the newly transferred detainee to Mesa Verde within 48 hours of this order, and (3) Plaintiffs' counsel shall disclose, under seal, the identities of those plaintiffs identified by initials and of the habeas petitioner forthwith.

This Order terminates docket number 31.

**IT IS SO ORDERED.**

Dated: March 15, 2023

f_____
TRINA L. THOMPSON
United States District Judge